**James G. SAUPITTY, Plaintiff-Appellee,**

v.

**YAZOO MANUFACTURING COMPANY, INC., Defendant-Appellant.**

No. 81-1802.

United States Court of Appeals, Tenth Circuit.

Feb. 3, 1984.

Rehearing Denied March 23, 1984.

**658**

Ralph W. Newcombe of Newcombe & Redman, Lawton, Okl., for defendant-appellant.

John M. Baum, Oklahoma City (Todd Ralstin, also of Baum & Ralstin, Oklahoma City, Okl., and Tom Leonard of Beottcher, Leonard & Brune, Ponca City, Okl., with him on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, LOGAN, Circuit Judge, and BRATTON, District Judge.*

LOGAN, Circuit Judge.

Defendant Yazoo Manufacturing Company, Inc. appeals from a jury verdict awarding plaintiff, James Saupitty, $560,000 compensatory and $440,000 punitive damages. Plaintiff was injured while operating a lawnmower manufactured by defendant. Plaintiff brought suit on the theory of manufacturer's product liability, alleging that design defects rendered the mower unreasonably dangerous to the user. Oklahoma law applies in this diversity case.

Plaintiff was a civilian employee of the United States at Fort Sill, Oklahoma, in the Grounds Maintenance Department. One of his responsibilities was to cut the grass on the Fort Sill grounds. To do so he used a six-year-old Yazoo YR–60 riding lawnmower that defendant had manufactured. Plaintiff was riding the mower down a hill

---

* Honorable Howard C. Bratton, Chief United States District Judge for the District of New Mexico, sitting by designation.

when the mower began bouncing and shaking. He attempted to slow or stop the mower by placing the machine into reverse gear. The gear shifting momentarily locked the mower's drive wheels, bucking plaintiff forward over the top of the machine. In his attempt to stop his fall his thumb and two fingers of his left hand were severed and his arm was injured.

Plaintiff alleged that the mower was defectively designed and unreasonably dangerous in a number of respects: It did not have a proper rear weight, a stabilizer bar, a dead man switch, or adequate brakes; the operator's seat was in an unsafe position; the controls allowed the operator to shift directly from forward to reverse; and the mower lacked sufficient warnings.

■ On appeal defendant asserts that the trial court should have directed a verdict in its favor because the mower's brakes and belt guard had been removed before the accident. Oklahoma cases have adopted the rule of *Restatement (Second) of Torts* § 402A(1)(b) (1965), which imposes liability only when the product "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." Thus, a manufacturer is not liable when an unforeseeable subsequent modification alone causes the plaintiff's injury. *Texas Metal Fabricating Co. v. Northern Gas Products Corp.*, 404 F.2d 921 (10th Cir.1968). The manufacturer is liable, however, if the subsequent modification was foreseeable, *see Vanskike v. ACF Industries, Inc.*, 665 F.2d 188, 195 (8th Cir. 1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982); *Merriweather v. E.W. Bliss Co.*, 636 F.2d 42, 45 (3d Cir. 1980), or if it was not a cause in fact of the injury. *See Blim v. Newbury Industries, Inc.*, 443 F.2d 1126, 1128 (10th Cir.1971). In *Blim,* a plastic injector press was originally equipped with mechanical drop bars designed to prevent injuries to operators' hands. The plaintiff's employer testified that he removed the bars because the press did not operate properly with the drop bars in place. In a suit against the manufacturer the jury found for the plaintiff, who was injured when the press closed on her hand. The manufacturer, relying on *Texas Metal,* contended that the removal of the drop bars constituted a material alteration of the product and thus was an intervening and independent cause of the injury as a matter of law. This Court disagreed, stating:

"Appellant's reliance upon *Texas Metal* is misplaced. In that case there was no demonstrated relationship between the rattle (the alleged defect) and the ultimate explosion.... Here, the mechanical drop bars were safety features designed to prevent just such an injury as that sustained by appellee. Since evidence demonstrated that they were already ineffective, their removal could not even exacerbate the hazard; *a fortiori,* it could not, as a matter of law, constitute a superseding, intervening cause of the injury."

443 F.2d at 1128.

■ Similarly, in the instant case, plaintiff's coworkers and his expert witness testified that the scrubber brakes would not stop the mower. Even the manufacturer's brochure declared that the foot brake was ineffective while the mower was in gear. Thus, the jury could find that to slow or stop the mower plaintiff would have had to shift into reverse even if the brakes had not been removed. Furthermore, plaintiff testified that his hand was injured by the mower's cutting blades rather than by the belts exposed by the removal of the mower's belt guard. Plaintiff did testify that he disengaged the mower's blades shortly before the accident, but his expert testified that the model of mower involved in the accident had a history of failing to disengage the blades when the operator placed the blade control in neutral. Thus, plaintiff presented evidence from which the jury could reasonably have concluded that the cutting blades continued to turn and cut plaintiff's hand, as he testified, and that the removal of the belt guard was not a cause of plaintiff's injury. Therefore, construing all of the evidence and the inferences therefrom in the light most favorable to the plaintiff, we cannot conclude that the re-

moval of either the mower's brakes or its belt guard constituted a superseding, intervening cause of plaintiff's injury as a matter of law.

■■■ We see no merit in defendant's other arguments for reversal. The plaintiff produced evidence from which the jury could reasonably have concluded that the mower possessed the alleged design defects when defendant sold it to the government. Defendant's argument that the district court improperly instructed the jury is unmeritorious, particularly since its counsel did not object to the instructions at the time they were given. The Oklahoma Supreme Court has held that punitive damages are recoverable in products liability cases. *See Thiry v. Armstrong World Industries,* 661 P.2d 515 (Okl.1983). Plaintiff produced sufficient evidence of the manufacturer's reckless disregard for public safety to justify submitting the issue of punitive damages to the jury. *See Sopkin v. Premier Pontiac, Inc.,* 539 P.2d 1393, 1397 (Okl.App.1975). The trial court did not err in refusing to instruct the jury on the theory of comparative negligence, since the Oklahoma Supreme Court has said that comparative negligence statutes have "no application to manufacturers' products liability." *Kirkland v. General Motors Corp.,* 521 P.2d 1353, 1367 (Okl.1974). Finally, although the award of $560,000 compensatory and $440,000 punitive damages is high, the amounts do not shock our conscience.

AFFIRMED.

SETH, Chief Judge, dissenting:

I must respectfully dissent. The majority concludes that the modifications to the six-year-old mower made by the government should be disregarded, and would apply tort standards and tort doctrines. Reading the record in the light most favorable to the plaintiff, I disagree. The plaintiff was awarded one million dollars for the loss of three fingers from his left hand and for punitive damages.

The government made two material alterations to the mower, either of which should constitute grounds for a directed verdict for the defendant on the strict liability claim under applicable doctrines. First, the mower's belt guards had been removed. At trial an issue was whether the mower's blades had cut Mr. Saupitty's fingers or whether his hand had become entangled in the swiftly moving belt and his fingers severed when they were pulled into contact with the belt's pulley. The majority accepts the plaintiff's assertion that his fingers were cut by the mower blades. The plaintiff testified that he had disengaged the mower's blades before starting down the hill. The majority assumes that the disengagement was unsuccessful because "his expert testified that the model of mower involved in the accident had a history of failing to disengage the blades when the operator placed the blade control in neutral." However, that theoretical possibility was directly refuted by Mr. Saupitty's own testimony that the blades were off and had stopped rotating. In these circumstances it is hard to understand why theory and not the actual facts were used. If the blades had indeed stopped turning, then the only other possibility was that Mr. Saupitty's fingers were severed when they were caught in the belt. Since the belt guard had been removed by the government after it bought the mower it must be concluded that a material alteration had occurred preempting strict liability.

The government also removed the mower's brakes sometime during its six years' use of the machine. That removal necessitated stopping the mower by pulling it into reverse. The machine could not even be otherwise slowed down because both the brakes and the throttle control had been removed. The degree of efficiency of the brakes before they were removed is not necessarily pertinent because although inefficient they nevertheless would have provided an alternative to the necessity of throwing the mower into reverse. In any event, the brakes originally on the mower met the standards for the industry. The plaintiff did not show that he had to stop the mower to avoid an accident. The mere slowing of the machine by use of the brakes could

easily have prevented the accident. Their removal must constitute a material alteration. The proof of the plaintiff on both the brake and belt guard removals did not meet the requirements of *Stuckey v. Young Exploration Co.*, 586 P.2d 726 (Okl.1978), or *Seay v. General Elevator Co.*, 522 P.2d 1022 (Okl.1974), to permit the trial judge to submit the case to the jury.

Even were strict liability to be imposed in this case, there is no evidence whatever in the record to support an award of punitive damages.

Since the defendant did not raise a contract specification defense, we cannot consider it on appeal.

I thus dissent.