Carla Kay SMITH, widow of Allen Harold Smith, Deceased, Plaintiff-Appellant,

and

Brenda June Ferguson, widow of Larry Kent Hayes, Deceased, Plaintiff-Appellant,

v.

FMC CORPORATION, a Delaware Corporation, Defendant-Appellee.

Nos. 82–2047, 82–2051.

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1985.

John W. Norman, Oklahoma City, Okl. (Thomas A. Wallace of Wallace & Isaacs, Oklahoma City, Okl., and Jack Sellers of Sapulpa, Okl., with him on briefs) of John W. Norman, Incorporated, Oklahoma City, Okl., for plaintiffs-appellants.

Ben L. Burdick and Jim K. Goodman, Oklahoma City, Okl. (Anton J. Rupert, Oklahoma City, Okl., with them on brief) of Crowe & Dunlevy, Oklahoma City, Okl., for defendant-appellee.

Before BARRETT and SETH, Circuit Judges, and BURCIAGA,[*] District Judge.

BARRETT, Circuit Judge.

Carla Kay Smith (Smith) and Brenda June Ferguson (Ferguson), appellants, seek review of an adverse judgment entered in favor of FMC after a jury trial. Smith and Ferguson's identical actions for damages for the wrongful deaths of their husbands were consolidated for trial by the district court. The relevant facts are not in dispute.

On June 13, 1979, appellants' husbands, Alan Smith and Larry Hayes, were employed as iron workers for Brown & Root, a general contracting firm, engaged in the construction of the Sooner Electric Generating Plant near Ponca City, Oklahoma. Smith and Hayes were killed while working inside a boiler silo on the job site when a piece of steel being carried by a crane fell on them.

At the time of the accident, Brown & Root was using a crawler crane manufactured by FMC and sold by Bado Equipment. The accident occurred while Larry Gibson, the crane operator, was moving a steel beam approximately 200 feet in the air, during which Gibson could not see the steel beam or his signalman.

Within their complaints, appellants alleged: FMC manufactured and sold the crane in question intending that it reach the user in the same condition as made and sold; the crane was defective and its defects made it unreasonably dangerous to the users; Bado, who knew or should have known of the crane's defects sold the crane to Brown & Root without correcting the defects and without warning Brown & Root of the danger in using the crane; the defects in the crane were the proximate cause of the deaths of Alan Smith and Larry Hayes; and that each of the appellants had sustained damages of $750,000. Prior to trial appellants dismissed without prejudice their actions against Bado.

Within its answers, FMC alleged that the complaints failed to state a cause of action upon which relief could be granted; that the decedents were negligent and that their negligence was the proximate cause of the

[*] The Honorable Juan G. Burciaga, United States District Judge for the District of New Mexico, sitting by designation.

accident or, in the alternative, that their negligence, combined with the negligence of third parties over which FMC had no control, had caused the accident; that the decedents voluntarily assumed the risk; and that the crane was being misused at the time of the accident and that such was an abnormal use.

At trial each appellant testified briefly relative to her husband's age and salary. Dr. Williams, a medical examiner, also testified briefly that the decedents were killed by a falling steel beam. The appellants also called David McCollum, who, having been qualified as an expert testified, *inter alia:* the accident was caused because of the crane's ability to two-block; two-blocking occurs when the hoisting cable of a crane is not stopped, and the cable continues to pull the crane's headache ball and hook (attached to the end of the cable), into the boom of the crane; after the crane two-blocked it dropped the steel beam which killed the decedents; and that "had the machine [crane] had an anti two-blocking device on it and had the [crane] hook been of a design, with a substantial safety latch, that accident or those injuries, those deaths would have never occurred." (R.Vol. VII at 78–79.) McCollum also testified that anti two-blocking devices were available as optional equipment for the crane; that anti two-blocking devices were standard equipment on 60-foot and less hydraulic cranes; that anti two-blocking devices were now being offered on cranes of greater length [than 60-foot] as standard equipment on other makes. McCollum further testified that the crane, without an anti two-blocking device, was a hazard and dangerous to an extent beyond that contemplated by the ordinary user of the crane. On cross-examination McCollum testified that the crane had two defects, no anti two-blocking device and an improper latch on its hook, and that a proper hook or an anti two-blocking device would have avoided the accident.

FMC called numerous witnesses, including Larry Gibson, the crane operator, who testified, *inter alia:* the accident occurred while work was being performed on the second boiler; each boiler has eight coal silos; his work on the day of the accident involved hoisting steel above the silos; that he was not aware that the decedents were working in one of the silos; in moving the steel he would lose sight of the end of the crane and his load and have to rely on his signalman; it was a general rule to never swing a load over anyone; he assumed that it was the responsibility of the iron workers to let him know that he was swinging a load over them; he had never two-blocked a crane before and the crane was operating properly on the day of the accident; and that after much thought, he still did not know if the accident was caused by the crane two-blocking or by his load hitting the jib of the crane.

FMC also presented evidence to the effect that: anti two-blocking devices were not installed as standard equipment on cranes such as the one involved in the accident because of maintenance problems, lack of reliability, and because customers do not want them as standard equipment; anti two-blocking devices give a false sense of security; the hook and ball assembly involved herein was not included with the crane equipment when FMC shipped the crane to Bado; that a properly trained crane operator is the best protection against two-blocking; and that if reliable anti two-blocking were available they would be extensively used.

At the conclusion of the trial, the jury returned a general verdict in favor of FMC and against appellants.

On appeal, although appellants set forth seven allegations of error, our discussion will be limited to the two allegations we deem dispositive: (1) whether the court erred in instructing on assumption of risk, and (2) whether the court erred in its instruction on manufacturer's product liability.

## I.

Within its instructions to the jury, the district court gave an assumption of risk instruction which stated in part:

Defendants contend that plaintiffs' decedents assumed the risk of their own injuries.

A person assumes the risk of injury or damage only if he voluntarily and unreasonably exposes himself to injury or damage with knowledge and appreciation of the danger and risk involved.

To establish this defense, defendants have the burden of proving each of the following propositions:

1. That a risk of injury existed which was inconsistent with the safety of the operation being performed.

2. That plaintiffs' decedents knew the risk of injury existed and realized the risk of injury. In determining whether plaintiffs' decedents realized the risk of injury, you may take into consideration whether the risk of injury was open and obvious to the ordinary person.

3. That plaintiffs' decedents voluntarily exposed themselves to the risk of injury which proximately caused their injuries.

Mere knowledge of the danger without full appreciation of the risk of injury involved is not sufficient to prove that plaintiffs' decedents voluntarily assumed the risk of injury.

R.Vol. I at p. 298.

Appellants contend that the district court erred in instructing on assumption of risk because the record is void of evidence that the decedents voluntarily and knowingly assumed the risk of their actions. FMC contends that sufficient circumstantial evidence was presented from which the jury could infer that the decedents knew that it was dangerous for the crane to operate over their heads, that they knew the crane was operating over their heads, and that under such circumstances, the assumption of risk instruction was properly given.

Both parties acknowledge that assumption of risk is a valid defense to a manufacturer's production liability action in Oklahoma as set forth in *Kirkland v. General Motors Corporation*, 521 P.2d 1353 (Okl. 1974). In *Kirkland* the court opined:

In order to avoid abuse of this legitimate defense, or confusion of care with its common law counterpart of the same name, it should be narrowly defined as *voluntary assumption of the risk of a known defect.*

521 P.2d at 1366.

The *Kirkland* doctrine was reiterated in *Jordan v. General Motors*, 590 P.2d 193, 196 (Okl.1979):

Assumption of the risk of a known defect is an affirmative defense in a manufacturer's products liability action. *When evidence is such that reasonable men might differ on the question of whether plaintiff's awareness of defect and continued use of the vehicle was proximate cause of the accident, this defense is a question of fact for the jury.* (Emphasis supplied.)

Paramount then, to the viability of an assumption of risk defense under the laws of Oklahoma is the *voluntary assumption of a known risk* created by a defect which existed in a product at the time it left the manufacturer. *Barber v. General Electric Company*, 648 F.2d 1272 (10th Cir.1981); *Hogue v. A.B. Chance Company*, 592 P.2d 973 (Okl.1978). *See also Bingham v. Hollingsworth Manufacturing Co., Inc.*, 695 F.2d 445 (10th Cir. 1982) (manufacturer has to prove plaintiff's subjective knowledge in connection with his (plaintiff's) voluntary assumption of a known risk).

Applying these standards to the facts herein we hold that the district court erred in giving an assumption of the risk instruction.

Appellants sued FMC alleging that their husbands were killed because the crane manufactured by FMC was defective. Appellants complaint was predicated entirely on a defective product; it did not allege any other basis for recovery.

FMC defended on the basis, *inter alia,* that the product was not defective. The bulk of FMC's case was directed to the proposition that the crane in question was not defective at the time it was manufac-

tured or at the time of the accident. In this regard, FMC made a very strong presentation to the effect that its crane was free of defects (as related to the accident).

Although FMC presented a substantial case in favor of its position that its crane was free of defects, it made no showing whatsoever that, assuming there was a defect, appellants' decedents knew of such risk and knowingly assumed the risk. Furthermore, although the decedents were working in the same general area where the crane was being operated, they were working on a job totally unrelated to the job being performed by the crane operator. Under such circumstances, and in the absence of direct or credible and sufficient circumstantial evidence that the decedents were aware of the danger and voluntarily assumed the risk, the Court improperly instructed the jury on the assumption of risk.

Viewing the evidence relative to assumption of the risk in the light most favorable to FMC, one can only conclude that: the decedents were working in a silo the entire morning of the accident; the crane was moving steel over the silo all morning; the crane operator was not aware that the decedents were working in the silo; the crane was not defectively manufactured or defective at the time of the accident; and the accident resulted from the negligence of the crane operator or the negligence of third parties over whom FMC had no control. Even were we to assume that the decedents were aware that the crane was moving steel over their heads and that they (decedents) negligently failed to alert their co-workers, such non-action cannot be construed to be the voluntary assumption of a known risk, since the record fails to establish a known risk (defect) in the crane on the job site.

Having held that it was error to instruct on the defense of assumption of risk, the general judgment entered in favor of FMC must be reversed and the case remanded for a new trial. A remand is necessary when, as here, we cannot ascertain from the record whether the jury found that the crane was defective and, if so, whether the decedents "assumed the risk" of working under it.

## II.

Although not dispositive, we believe that appellants contention that the district court improperly instructed on manufacturer's product liability merits brief discussion.

Appellants contend that the district court erred in charging the jury that "the manufacturer is held to that degree of skill and of knowledge of developments in the art of the industry then existing when the product was manufactured. However, compliance with industry standards is not a defense to an action predicated upon manufacturer's product liability." We hold that although this instruction was not improper under the record herein, the district court may wish to review this instruction upon remand, inasmuch as a manufacturer has a responsibility to warn of a defective product at any time after it is manufactured and sold if the manufacturer becomes aware of the defect.

REVERSED AND REMANDED.