**Roberta Ann McMURRAY, executrix of the estate of Dennis Ray McMurray, deceased, Plaintiff-Appellant,**

v.

**DEERE AND COMPANY, INC., A Delaware Corporation, Defendant-Appellee.**

No. 84-2771.

United States Court of Appeals, Tenth Circuit.

Sept. 22, 1988.

Rehearing Denied Oct. 31, 1988.

Ronald S. Grant of Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl. (Floyd W. Walker, was also on the brief), for plaintiff-appellant.

Bert M. Jones and JoAnne Deaton of Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Okl. (J.A. McCulloch, was also on the brief), for defendant-appellee.

Before HOLLOWAY, Chief Judge, and MOORE and BALDOCK, Circuit Judges.

HOLLOWAY, Chief Judge.

This is a diversity wrongful death-products liability action filed by Roberta Ann McMurray against Deere & Company, Inc. McMurray is the executrix of the estate her husband, Dennis Ray McMurray (decedent), who was run over and killed by his tractor after "bypass starting" it. McMurray claims the tractor was defective because it could be bypass started while in gear, and because Deere failed to warn decedent of this fact. The case was tried to a jury which returned a verdict in Deere's favor. After the district court denied her motion for a new trial, McMurray filed this appeal, asserting three claims of error regarding the jury instructions under Oklahoma law. We reverse and remand.

I

The pertinent facts are as follows. Decedent was killed after starting his tractor on his farm near Nowata, Oklahoma on October 9, 1983. The tractor is a 1977 John Deere 4640 agricultural model. It was first sold to another party in October 1977. The original dealer reacquired the tractor in October 1980 as a trade in, and then sold it to decedent on August 5, 1983.

The tractor is equipped with a "neutral start switch" (also known as a "starter

safety switch") which prevents the engine from being started while the transmission is in gear. This device is part of the tractor's normal starting circuitry. To start the tractor, the operator inserts the key in the ignition and turns it. Because of the neutral start switch, however, the engine will not start unless the transmission is in neutral.

However, it is possible to bypass the normal starting circuitry by placing a screwdriver or similar piece of metal between two terminals on the starter and the starter solenoid. This method is often called "bypass starting" because it bypasses the normal starting circuitry.[1] When this method is employed, the neutral start switch is also bypassed and the engine can be started even though the transmission is in gear.

On October 8, 1983, the day before the accident, the tractor's normal starting circuitry malfunctioned, making it impossible to start the tractor with the key. Decedent and his helpers therefore bypass started the tractor. By the next day, decedent and his various helpers had bypass started the tractor several times, without incident.

On the day of the accident, decedent and his friend Ralph Titsworth had been plowing with the tractor. When the men broke for lunch, Titsworth left one of the transmission levers in a position which allowed it to fall into gear when he turned the engine off. When the men returned from lunch, the tractor was therefore in gear. Decedent and Titsworth stood in front of the tractor and attempted to bypass start the

engine by placing a screwdriver between the starter and the solenoid. The tractor started, hesitated, and then lurched forward, crushing the decedent under its rear wheels and killing him.

Decedent's wife brought this wrongful death action claiming manufacturers' strict products liability. Specifically, McMurray claimed the tractor was defective because it could be bypass started while in gear, and because Deere failed to warn decedent of this fact, thus making the tractor dangerous beyond the contemplation of the ordinary user possessing ordinary knowledge of the tractor.[2] She claimed decedent's death resulted from this defective condition and therefore sought compensatory damages. She also sought punitive damages, contending that Deere knew of the alleged defect, and further knew that bypass starting was a common practice and that operators of Deere tractors had been injured or killed in similar accidents.

Deere denied the tractor was defective and denied decedent's death resulted from the alleged defect. Deere also asserted two affirmative defenses: first, that decedent assumed the risk of a known defect when he bypass started his tractor; and second, that the act of bypass starting constituted a misuse of the tractor. Specifically, Deere claimed that decedent had extensive experience with large pieces of earth moving equipment such as bulldozers, scrapers, graders, and loaders. Deere also claimed decedent failed to follow the operating instructions.

1. This method is also known as "hot-wiring." See *Wyatt v. Winnebago Indus.*, 566 S.W.2d 276, 282 (Tenn.Ct.App.1977). Tractor operators frequently use this method to start their tractors when the normal starting circuitry fails. *See, e.g., Armstrong v. Farm Equip. Co.*, 742 F.2d 883 (5th Cir.1984); *Ford Motor Co. v. Eads*, 224 Tenn. 473, 457 S.W.2d 28 (1970).

2. It is important to understand McMurray's exact theory regarding the alleged defect. She does not claim the tractor was defective because it could be bypass started, because the normal starting circuitry had malfunctioned, because the transmission levers could fall into gear, or because there was no parking brake. For cases involving those alleged defects, see *Johnson v. International Harvester Co.*, 702 F.2d 492, 494

(4th Cir.1983); *Wyant v. J.I. Case Co.*, 633 F.2d 1254 (7th Cir.1980); *Lancaster v. Jeffrey Galion Inc.*, 77 Ill.App.3d 819, 33 Ill.Dec. 259, 261, 396 N.E.2d 648, 650 (1979).

The gravamen of her theory is that an ordinary consumer, after becoming familiar with the tractor, would believe it could only be started when the transmission was in neutral. An ordinary consumer would not understand that the neutral start switch would not function if the tractor was bypass started. Under her theory, Deere should have either: 1) designed the tractor so that it could not be started in any manner unless the transmission was in neutral; or 2) warned decedent that the tractor could be bypass started in gear.

The district court denied McMurray's request for an instruction that if the jury found the tractor was defective, decedent's failure to follow the operating instructions would not bar recovery. Over McMurray's objection, the court instructed the jury on the affirmative defenses of misuse and voluntary assumption of the risk of a known defect. McMurray now seeks reversal, claiming the instructions misled the jury.

## II

In this diversity case the law of Oklahoma governs. Oklahoma embraced the doctrine of manufacturers' strict products liability, as expressed in the Restatement (Second) of Torts § 402(A), in *Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okla.1974). *See generally* Pearson, *An Overview of Oklahoma Products Liability Law: Kirkland v. General Motors Corporation and Beyond*, 59 Okla.B.J. 1417 (1988) (hereafter "Pearson"). Under this doctrine,

> one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402(A)(1).

Under Oklahoma law, a plaintiff must prove three elements to recover on the theory of manufacturers' strict products liability: (1) the product was the cause of the injury; (2) the defect existed in the product at the time it left the manufacturer's possession and control; and (3) the defect made the product unreasonably dangerous to the plaintiff or his property. *Kirkland*, 521 P.2d at 1363; *Smith v. United States Gypsum Co.*, 612 P.2d 251, 253 (Okla.1980); *Cunningham v. Charles Pfizer & Co.*, 532 P.2d 1377, 1379 (Okla.

1974); *see also Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1455 (10th Cir.1987); *Brown v. McGraw–Edison Co.*, 736 F.2d 609, 613 (10th Cir.1984); *Hurd v. American Hoist & Derrick Co.*, 734 F.2d 495, 499–500 (10th Cir.1984); *Hagan v. EZ Mfg. Co.*, 674 F.2d 1047, 1050 (5th Cir.1982) (discussing and applying Oklahoma law); *Mustang Fuel Corp. v. Youngstown Sheet & Tube*, 561 F.2d 202, 206 (10th Cir.1977).

A product is unreasonably dangerous if it is " 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.' " *Kirkland*, 521 P.2d at 1362–63 (quoting Restatment (Second) of Torts § 402(A) comment i (1965)); *see also Brown*, 736 F.2d at 613; *Lamke v. Futorian Corp.*, 709 P.2d 684, 685–86 (Okla.1985). The only defenses to this type of action are lack of proof of causation beyond a mere possibility, voluntary assumption of the risk of a known defect, or abnormal use of the product. *Kirkland*, 521 P.2d at 1366–68; *see also Smith v. United States Gypsum Co.*, 612 P.2d 251, 254 (Okla.1980); *Fields v Volkswagen of Am. Inc.*, 555 P.2d 48, 56 (Okla. 1976). *See generally*, 46 A.L.R.3d 240 (1972).[3] The defense of contributory negligence is not available. *Fields*, 555 P.2d at 56; *Kirkland*, 521 P.2d at 1366–68; *see also Saupitty v. Yazoo Mfg. Co.*, 726 F.2d 657, 660 (10th Cir.1984); Pearson, *supra* at 1421 & n. 70.

We turn to McMurray's assignments of error regarding the instructions. We examine the instructions as a whole to determine whether they properly presented the law which is applicable to the issues. *Marshall v. Ford Motor Co.*, 446 F.2d 712, 715 (10th Cir.1971); *Messler v. Simmons Gun Specialties, Inc.*, 687 P.2d 121, 129 (Okla. 1984).

## A. VOLUNTARY ASSUMPTION OF THE RISK OF A KNOWN DEFECT

McMurray first argues the court erred by instructing the jury on assumption

---

**3.** Other defenses have been recognized during the development of the theory, for example lapse of time/extended use, state of the art,

substantial change in the product, and learned intermediary. *See* Pearson, *supra* at 1421–22.

of the risk.[4] Specifically, she contends there was no such evidence in the record to warrant the instruction. We agree.

*Kirkland* recognized assumption of the risk as a valid affirmative defense in this type of action. However, there the court carefully explained that this defense differs from such a defense in negligence actions: "[c]omplicated semantic difficulties arise when the defense of assumption of the risk is considered. In order to avoid abuse of this legitimate defense, or confusion of same with its common law counterpart of the same name, it should be narrowly defined as *voluntary assumption of the risk of a known defect.*" 521 P.2d at 1366 (emphasis in original; footnote omitted) (citing *Williams v. Ford Motor Co.,* 454 S.W.2d 611 (Mo.Ct.App.1970); Restatement (Second) of Torts § 402A comment n; W. Prosser, *The Law of Torts,* 3d ed., § 78). Under *Kirkland,* "there must be a showing that plaintiff *knew of a defect* unreasonably dangerous in nature, yet voluntarily used the product. Only then is he precluded from recovery under this defense." *Hogue v. A.B. Chance Co.,* 592 P.2d 973, 975 (Okla.1978) (emphasis in original).

This principle has been restated by the Supreme Court of Oklahoma, *e.g., Clark v. Continental Tank Co.,* 744 P.2d 949, 954 (Okla.1987); *Hogue v. A.B. Chance Co.,* 592 P.2d 973, 975 (Okla.1978); *Jordan v. General Motors Corp.,* 590 P.2d 193, 196 (Okla.1979), and by this court when applying Oklahoma law, *e.g., Smith v. FMC* *Corp.,* 754 F.2d 873, 876 (10th Cir.1985); *Barber v. General Elec. Co.,* 648 F.2d 1272, 1277 (10th Cir.1981). There must be evidence sufficient for a conclusion that "appellants' decedents knew of such risk and knowingly assumed the risk." *Smith,* 754 F.2d at 877; *Pearson, supra* at 1421 & nn. 76, 77.

"The key to the question is factual. It is how specific [the injured party's] knowlege of the [product's] defect and the resultant risks must be in order for the trial court to be justified in submitting [an assumption of the risk] defense to the jury." *Bingham v. Hollingsworth Mfg. Co.,* 695 F.2d 445, 448 (10th Cir.1982) (applying Oklahoma law). Here, there was no evidence whatsoever, direct or circumstantial, that decedent knew of the alleged defect in the tractor: that it could be bypass started while in gear.

Deere had the burden of proving such knowledge in raising this affirmative defense. *See Smith,* 754 F.2d at 876; *Bingham,* 695 F.2d at 452; *Pearson, supra* at 1420 n. 58. Subjective awareness of the defect and consequent risk of injury must be demonstrated. *See, e.g., Bingham,* 695 F.2d at 448–49 (plaintiff admitted she knew the load she was pulling was great and that she had to be careful); *Clark,* 744 P.2d at 954 ("Plaintiff was well aware that the safety devices had been disconnected and/or removed and he was well aware, by his own admissions, of the inherent risk of using the piece of equipment without such

---

**4.** The court instructed the jury:

Voluntary Assumption of Risk of Known Defect

As a further defense, the defendant Deere and Company, Inc., alleges that the plaintiff's husband, Dennis Ray McMurray, assumed the risk of injury from the defect which the plaintiff contends caused his death. If you find each of the following propositions, the plaintiff cannot recover from the defendant Deere and Company, Inc.:

First: That a defect existed;

Second: That the plaintiff's husband, Dennis Ray McMurray, knew of the defect that existed; and

Third: That the plaintiff's husband, Dennis Ray McMurray, voluntarily exposed himself to the danger created by such known defect and was killed thereby.

While the test to be applied in determining whether Dennis Ray McMurray voluntarily exposed himself to a known defect is a subjective test, in the sense that it is his knowledge, understanding and appreciation of the danger associated with such defect which must be assessed, that determination is to be made upon your assessment of all of the facts established by the evidence. You are not compelled to find Dennis McMurray was unaware of the defect, if, in light of all the evidence, he could not have been unaware of the defect; and the factors of his age, experience, knowledge, and understanding, as well as the obviousness or lack thereof of the defect, will all be relevant to your determination of the issue. I R. 118–19.

safety devices."); *Jordan,* 590 P.2d at 196 ("There was evidence plaintiff knew the car was acting strangely, having a tendency to veer."); *cf. Steele v. Daisy Mfg. Co.,* 743 P.2d 1107, 1109 (Okla.Ct.App.1987) ("The potential for danger inherent in an air rifle is readily apparent....").[5]

The only evidence cited by Deere on the decedent's knowledge was summed up by Deere as follows:

> Testimony was undisputed that McMurray was the owner and principal operator of the John Deere 4640 tractor manufactured by the Defendant. There was also testimony that on the previous occasions where McMurray had bypass started the tractor, he had placed an operator in the cab, or checked the gears before-hand. There was testimony that he had instructed his employees, including plaintiff herself, who assisted her husband in the operation of their heavy equipment, that all equipment should be taken out of gear when they were through operating it.
>
> There was testimony that virtually all machines can be bypass started in gear, and that, if started in gear, these machines will move. There was also, according to the only witness to the accident, the dying exclamation of McMurray "It's in gear" before the tractor ran over him and killed him.

Brief of Appellee at 9–10.

This evidence was insufficient to warrant submission of the affirmative defense to the jury. Any inferences that could be drawn constitute nothing more than pure speculation. Assuming decedent usually made sure other equipment was in neutral before starting, that he had extensive experience with similar equipment and had bypass started this tractor on other occasions, one cannot conclude that he knew this tractor could be bypass started in gear. Deere's evidence supports conjectural inferences only. *See Smith,* 754 F.2d at 876 (evidence was insufficient to warrant submission of assumption of the risk defense when two steelworkers who were killed when a piece of steel being carried by an allegedly defective crane fell on them, because there was no evidence that they knew of the alleged defect in the crane). A showing that decedent should have known of the defect is not enough.

Because Deere had the burden of presenting proof of its affirmative defense which would support more than mere speculation, and failed to present such proof, it was error to submit the defense to the jury. As we did in *Smith v. FMC Corp.,* 754 F.2d at 876–77, we must hold that this fundamental error requires reversal for a new trial.

## B. ABNORMAL USE OF THE PRODUCT

■ McMurray next claims the evidence was not sufficient to warrant the submission to the jury of the affirmative defense of abnormal use of the product also termed "misuse" by the Oklahoma courts. *Fields,* 555 P.2d at 56.[6] In *Kirkland* the court explained: "A second defense, well established in negligence cases, and applicable to manufacturers' products liability is the defense of abnormal use. If the plaintiff is

---

**5.** In *Bingham,* we stated that "[t]rial courts in Oklahoma may not grant summary judgments on the basis that plaintiff assumed the risk ... without proof of specific knowledge in light of *Hogue,* but that does not mean that they cannot submit that defense to the jury where the *direct evidence of plaintiff's knowledge* is unclear." *Bingham,* 695 F.2d at 449 (emphasis added). In *Bingham,* however, the unclear direct evidence was an admission by the plaintiff, obtained during cross-examination, that she knew of potential risks involved with the use of the product. *Id.* at 448–49. In this case, however, there is no evidence that would indicate the decedent knew of the alleged defect and of the risks involved.

**6.** The court instructed the jury here as follows:

Misuse

As the Court has previously instructed you, a manufacturer is liable for injuries caused by a defective product, only if that product was being properly used. Misuse is a complete defense in a manufacturers' products liability action. However, the defense of misuse is not applicable unless the product was being used for a use that was not intended by the manufacturer, or for a use that would not reasonably have been foreseen or anticipated by the manufacturer. There is no misuse when a product was used for a proper purpose, but in a careless manner.

using the product for some purpose for which it was not intended and is consequently injured, he should not recover." 521 P.2d at 1366. The court expanded on this defense in *Fields:*

> Generally, when we speak of the defense of misuse or abnormal use of a product, we are referring to cases where the method of using a product is not that which the manufacturer intended or is a use that could not reasonably be anticipated by a manufacturer. *A distinction must be made between use for an abnormal purpose and use for a proper purpose but in a careless manner (contributory negligence).*

555 P.2d at 56 (emphasis added); *see also* Pearson, *supra* at 1420–21. Courts applying Oklahoma law have continued to recognize the difference between use for an abnormal purpose, and careless use for a proper purpose. *E.g., Fields,* 555 P.2d at 57; *Spencer v. Nelson Sales Co.,* 620 P.2d 477, 482–83 (Okla.Ct.App.1980). Other courts have recognized this difference when deciding factually similar cases. *E.g., Lancaster v. Jeffrey Galion, Inc.,* 77 Ill.App.3d 819, 822, 33 Ill.Dec. 259, 263, 396 N.E.2d 648, 652 (1979); *Ford Motor Co. v. Matthews,* 291 So.2d 169, 174 (Miss.1974); *Wyatt v. Winnebago Indus.,* 566 S.W.2d 276, 282 (Tenn.Ct.App.1977). For example, *Matthews* stated:

> Ford next contends that [plaintiff's] act of standing on the ground and starting the tractor while in gear was a misuse of the product. . . . . It is apparent that the failure of the safety switch to prevent the tractor from cranking in gear was a cause of the accident. *The failure of the decedent to make sure the tractor was in neutral before starting [if that were true] may be characterized as the omission of a customary precaution, although there is no evidence that he was warned of this danger, or that he knew of the danger. Nevertheless, this was not such a misuse of the tractor as to relieve Ford from its strict liability for the defective condition of the tractor.*

291 So.2d at 174, (emphasis added), *cited with approval in Oklahoma Fields,* 555 P.2d at 56; *Spencer,* 620 P.2d at 481 n. 8.

Deere attempts to distinguish *Matthews* by arguing that there the plaintiff used his key to start the tractor and was apparently unaware the safety switch was inoperative. Deere's implicit conclusion is that bypass starting constitutes an abnormal use of the tractor. We disagree. As we have held in Part II–A, there was no evidence here sufficient to show that decedent McMurray knew of the alleged defect—that the tractor might be in gear and yet be bypassed started. Under *Fields,* decedent misused his tractor only if: 1) the method of using the product is not that which the manufacturer intended; or 2) is a use that could not reasonably be anticipated by the manufacturer. *See* 555 P.2d at 56.

*Fields* teaches that the injured party must make abnormal use of the allegedly defective *product. Id.* We must therefore examine the intended or foreseeable uses of the tractor. We think it obvious that Deere intended and realized that the tractor would be used for agricultural purposes, *i.e.* for plowing fields. *See Stewart v. Scott–Kitz Miller Co.,* 626 P.2d 329, 331 (Okla.Ct.App.1981). Decedent was using, or attempting to use, his tractor for that exact purpose when the accident occurred.

Deere's argument is subject to the same infirmity as the defendant's argument in *Spencer,* 620 P.2d at 482. In that case, the plaintiff was injured when the highly flammable underwear he wore caught fire. Defendant argued that plaintiff "misused" the product because he should have worn protective outer clothing. The trial court instructed the jury on the affirmative defense of misuse and the Oklahoma Court of Appeals reversed, stating:

> *The instruction misguided the jury and should not have been given.* There is no evidence that plaintiff was using subject clothing in any manner or for any purpose other than as an undergarment to keep himself warm. It is not disputed that he was wearing the clothing in a perfectly normal manner and in a way intended by its supplier. The judicial implication that he was not, and the granting to the jury authority to find he was not, was improper. What the de-

fendant contends is that proper precaution dictated plaintiff wear leather coveralls to retard penetration of sparks and since he did not, his malfeasance—an act of negligence—contributed to the cause of his injuries. The distinction between "use for an abnormal purpose and use for a proper purpose but in a careless manner [contributory negligence]" [is recognized in Oklahoma].

620 P.2d at 482–83, (emphasis added).

Here, decedent was using and attempting to use his tractor for a proper purpose —plowing; any carelessness in his attempts to bypass start the tractor was only contributory negligence—not a defense here. *Spencer*, 620 P.2d at 482–83; *Fields*, 555 P.2d at 57; *Hogue*, 592 P.2d at 975; *Lancaster*, 33 Ill.Dec. at 263, 396 N.E.2d at 652; *Matthews*, 291 So.2d at 175.[7] This is entirely different from a situation where a farmer is using his tractor for an abnormal purpose, for example attempting to demolish a building.

■ Deere also argues that there was misuse because the decedent failed to follow Deere's instructions and warnings.[8] We disagree. A similar theory of Deere's was rejected in *Reed v. John Deere*, 569 F.Supp. 371, 377 (M.D.La.1983). There the court said that "it was certainly forseeable to John Deere that someone might start the engine of this tractor while not in the driver's seat, in order to check repairs ... [t]his tractor was in normal use at the time of the accident despite the fact that the operator was not seated in the operator's seat exactly in accordance with the manufacturer's instructions." *Id.*

The evidence of alleged misuse was relevant in defendant's attempt to develop the defense that the decedent assumed the risk of the defect claimed, which we have held defendant failed to do. It was also relevant as to whether the tractor was a dangerous product in light of the warnings and instructions given. *See Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1457–58 (10th Cir.1987). But, as the court concluded in *Reed v. John Deere, supra,* the tractor was not used in an abnormal manner or in an unforseeable way when the decedent bypassed started the tractor as he did. And, as we held earlier, there was not sufficient evidence to support an inference that he knew of the alleged defect—that such bypass starting could be done while the tractor was in gear. None of the warnings or instructions cautioned the decedent of the fact that this tractor might be in gear and yet it would bypass start.

In sum, the evidence failed to entitle the defendant Deere to a misuse instruction here and the giving of the instruction was in error as the Oklahoma Court of Appeals held in *Spencer v. Nelson Sales Co.*, 620 P.2d at 482.

## C. EFFECT OF THE ERRONEOUS INSTRUCTIONS

■ We must decide whether the errors in the charge were prejudicial so as to require reversal. *See Joyce v. Atlantic*

---

7. The record indicates decedent's actions in starting the tractor as he did might have been forseen by Deere. As mentioned *supra* note 1, farmers have long been bypass starting their tractors. We also note that Deere was aware of this practice, and implemented a campaign to warn tractor owners of the dangers of bypass starting. *See, e.g.,* Plaintiff's Ex. 36, 37, 40, 42, 47, 48, 49; II R. at 46–51; III R. at 72–81, 134–42. (Deere does not argue or present evidence that these warnings reached decedent).

8. The defendant was permitted to offer evidence by its engineer, Mr. Strazheim, in which he stated that:

It has a safety alert symbol on the top, which is a triangle with an exclamation point in it. It says Caution. And the next instruction— the warning is Keep All Shields in Place.

Number two, Make Certain Everyone is Clear of the Machine Before Starting Engine or Operation. Number three, To Stop Engine, Lower Implement to Ground and Shift to Park Before Dismounting. Wait for All Movement to Stop Before Servicing Machinery. Number four, Keep All Others Off Equipment. Five, Keep Hands, Feet and Clothing Away From the Power Driven Parts.

(Tr. Vol. IX, p. 10).

The defense attempted to show a violation of this warning. The warning, defendants Exh. No. 28, is reproduced as an appendix to this opinion.

Plaintiff's witness Sevart stated the operator's manual told operators to start the tractor only from the seat and with the key. The operator's manual itself is not in our record. VII R. at 34.

*Richfield Co.*, 651 F.2d 676, 682–83 (10th Cir.1981).

In *Smith v. FMC Corp.*, we stated: "Having held that it was error to instruct on the defense of assumption of the risk, the general judgment . . . must be reversed and the case remanded for a new trial. A remand is necessary when, as here, we cannot ascertain from the record whether the jury found that the [product] was defective and, if so, whether the decedents 'assumed the risk' of working under it." 754 F.2d at 877; *see also Spencer*, 620 P.2d 477 (Okla.Ct.App.1980) (unwarranted misuse instruction required reversal).

The same problem arises here. The jury might have based its verdict on a finding that the tractor was not defective. On the other hand, the jury might have based its verdict on findings that decedent "assumed the risk" of injury, or "misused" the tractor; these latter findings would be legally impermissible here because there was no evidence to properly support either conclusion. The general verdict frustrates a determination of the basis of the jury's decision, and reversal and remand for a new trial are required.

### III

Plaintiff McMurray contends that the district court erred by refusing to instruct the jury that any negligence by the decedent or his helper cannot bar her recovery. While this record is not such as to show reversible error on this ground,[9] we discuss the issue because of the retrial to follow and the significance of the issue.

The record indicates that defendant Deere was permitted to examine witnesses, over plaintiff's objections, concerning acts which might lead to an inference of negligence. *See e.g.*, IV R. at 56, 37–91 (cross-examination of Ralph Titsworth). We cannot determine whether defendant Deere was only attempting to show—as it may—that these acts showed that decedent knew and assumed the risk of the defect, or misused the tractor, or that the decedent's negligence itself caused the accident so that there could be no recovery. *Kirkland*, 521 P.2d at 1366. ("If some act of the plaintiff *caused* the injury, rather than the defective product itself, causation is missing, and the plaintiff may not recover.") (emphasis in original). However, if the evidence is developed and argued so as to suggest that despite the effect of a dangerously defective product the factor of decedent's negligence barred recovery, the theory would directly conflict with Oklahoma law in strict liability suits. *Hogue v. A.B. Chance Co.*, 592 P.2d 973, 975 (Okla. 1978); *Fields*, 555 P.2d at 55.

On remand, if evidence of such acts of alleged negligence is introduced, and it appears that the theory is being suggested that such negligence, as a contributing factor, would bar recovery despite the defect claimed, and that there is a danger the jury might so reason, then the trial court should give an instruction that contributory negligence is no bar to recovery in this products liability case.[10]

### IV

Due to the reversible errors in the giving of the instructions the judgment is REVERSED and the cause is REMANDED for further proceedings.

---

9. For example, we do not have the closing arguments in our record.

10. Defendant Deere relies on *Bingham v. Hollingsworth Mfg. Co.*, 695 F.2d 445, 454 (10th Cir.1982). We feel that the instant case is not controlled by *Bingham*. In *Bingham* there was merely a question asked by the foreman of the jury whether the plaintiff had fastened her seatbelt and we said that this alone did not make it necessary to have an instruction that contributory negligence was not a defense. We feel that the instant case is a more serious one on the record of the trial before us in that there was very pointed development of testimony by the defendant in cross-examining Mr. Titsworth, the decedent's helper, in a way that appeared to emphasize the theory of negligence by the decedent or Mr. Titsworth as a bar to recovery. *See* IV R. at 56, 37–91.

## APPENDIX

 **CAUTION**

1. Keep all shields in place.
2. Make certain everyone is clear of machine before starting engine or operation.
3. Stop engine, lower implement to ground and shift to "PARK" before dismounting. Wait for all movement to stop before servicing machinery.
4. Keep all others off equipment.
5. Keep hands, feet and clothing away from power-driven parts.
6. Reduce speed when turning or applying individual brakes.
7. Couple brake pedals together for road travel.
8. Use flashing warning lights on highway unless prohibited by law.
9. Use of seat belt with this protective structure is recommended for almost all operating conditions.

# IMPORTANT

1. After starting engine, do not exceed 1000 RPM until oil pressure gauge needle is in operating zone.
2. Start engine immediately if stalled while working to provide turbocharger lubrication.
3. Before stopping warm engine, idle several minutes under 1000 RPM to cool turbocharger turbine.
4. After prolonged idle periods, see Operator's Manual for starting instructions.

BALDOCK, Circuit Judge, dissenting.

This case concerns an experienced tractor operator bypassing a tractor's starting circuitry and starting the engine by shorting across the electrical contact points on the starter motor with a metal object, a screwdriver. One of the inherent dangers of this procedure is that someone must stand in the path of the tractor's rear wheels. After reviewing the evidence, it is my view that the court's instructions to the jury were supported by the evidence and the law. I respectfully dissent.

I agree with the majority that it is important to identify the theory of the case presented by plaintiff-appellant (McMurray). *See* Majority Opinion at 1438 n. 2. The majority then explains the premise of that theory—"that an ordinary consumer, after becoming familiar with the tractor, would believe it could only be started in neutral. An ordinary consumer would not understand that the neutral start switch would not function if the tractor was bypass started." *Id.* This refinement of McMurray's theory, with its emphasis on an ordinary consumer's reliance on the neutral start switch, is not consistent with the emphasis in McMurray's own description of the alleged defective condition.

Plaintiff contended that because the tractor could be started in gear by using the bypass starting method, and because no warning of this potentiality was given, the tractor was defective and dangerous beyond the contemplation of the ordinary user possessing ordinary knowledge of the tractor.

Plaintiff contended that Decedent's death was a direct result of the defective condition of the tractor, and that Defendant was therefore liable for compensatory damages.

Plaintiff–Appellant's Brief at 6. Thus, this case does not involve the failure of the neutral start switch to perform as intended. Rather, McMurray contended that Deere's knowledge of the limitations of the neutral start switch made Deere liable for punitive damages. Punitive damages were warranted because Deere knew "that the neutral start switch would not prevent the engine from starting in gear if it was bypass started." *Id., accord* rec. vol. I, doc. 15 at 2 (amendment to complaint for punitive damages). Yet the neutral start switch could not operate if the normal starting circuitry were bypassed. Rec. vol. I, doc 32, ¶ 1.6 at 2 (pretrial order). It was the tractor's capability of starting in gear that was the claimed product defect in this case. *See* Plaintiff–Appellant's Brief at 6. *Accord* rec. vol. I, doc. 1 at 5 (complaint); doc. 32, ¶ 1.8 at 2 (pretrial order). There simply is no evidence that the decedent

relied on the neutral start switch to protect him under these circumstances.

Regarding the claimed defect, the majority holds that the evidence was insufficient to instruct the jury concerning Deere's defenses concerning 1) voluntary assumption of the risk of a known defect, and 2) abnormal use of the product. A party is entitled to instructions concerning its theory of the case if there is evidence, direct or circumstantial, to support that theory. *Brownlow v. Aman*, 740 F.2d 1476, 1489 (10th Cir.1984); *Haines v. Powermatic Houdaille, Inc.*, 661 F.2d 94, 96 (8th Cir.1981). In deciding whether there is competent evidence to warrant the giving of an instruction, the inquiry is whether a jury properly could find evidence which would support a verdict based on the instruction. 9 C. Wright & A. Miller, Fed.Prac. & Proc. § 2524 (1971). In making this determination, a court is not to substitute its judgment for that of the trier of fact—it may not weigh the evidence or evaluate the credibility of witnesses. The evidence, and the inferences therefrom, are viewed in the light most favorable to the party seeking the instruction. *Hallberg v. Brasher*, 679 F.2d 751, 757 n. 6 (8th Cir.1982). More than a scintilla of evidence must support the requested instruction, but all of the evidence must be considered.

Applying this standard, I cannot agree with the majority's conclusion that Deere was not entitled to an instruction on its assumption of the risk defense. The majority characterizes the evidence on this defense as purely speculative and conjectural. Majority Opinion at 1441. But if the evidence is viewed as a whole in the light most favorable to Deere, it is sufficient to support the inference that the decedent was aware that the tractor could start in gear when shorting across the starter terminals. Merely because the decedent was unaware that the tractor was in gear at the time of the accident does not mean that he was unaware that the tractor had the capability to start in gear when bypass starting.

In deciding whether decedent had knowledge that the tractor could be bypass started in gear, the jury was entitled to consider the decedent's familiarity with heavy equipment in general and this tractor in particular. The decedent was engaged in business as a contractor, specializing in large-scale earth moving operations, in several states. He had a considerable inventory of heavy equipment which was used in the business, including bulldozers, graders, scrapers, loaders, dump trucks and a tractor-trailer. Rec. vol. III at 186, 189–95, 196–198. Whenever decedent bought a piece of equipment, he would normally study the owner's manual. Rec. vol. VIII at 42. His business employed up to eight heavy equipment operators, rec. vol. III at 238, but he also operated these pieces of equipment from time to time. *Id.* at 195. Decedent was an experienced heavy equipment operator,[1] *id.* at 195, 232, and had considerable experience with this tractor, *id.* at 253.

On the issue of knowledge, the jury could also consider the operating instructions that decedent gave to others. Decedent owned two Deere industrial tractors. Rec. vol. VIII at 43. He had taught others to operate this tractor, including his wife and an employee. Rec. vol. VIII at 45, vol. III at 236. His wife testified that the decedent taught her to start the tractor with the key and with one foot on the clutch and one foot on the brake in the interest of safety. Rec. vol. VIII at 46, 48. He also taught her to put the tractor in neutral. *Id.* He taught his employee to put equipment in neutral for safety purposes. Rec. vol. III at 237.

On the issue of knowledge, the jury was entitled to consider why decedent might bypass start the tractor given the inherent danger of such a procedure. About the time of the accident, decedent was extremely anxious to complete the harvest because the crop had been planted late and decedent was completing another job in his

---

1. Decedent previously had worked in his own landscaping business which utilized three small

yard tractors. Rec. vol. VIII at 7.

contracting business during the week. Rec. vol. VIII at 37.

The jury also could consider the way in which decedent operated the tractor. On previous occasions the tractor was bypass started with someone in the cab. Rec. vol. III at 239, 242–43. In fact, the day before the accident, the decedent trained his employee to operate the tractor. *Id.* at 245–46. The decedent bypass started the tractor on the ground while his employee was in the cab with the tractor in neutral and the clutch and brakes depressed. *Id.* at 242–43. The employee testified that he knew that the decedent was good about leaving heavy equipment in neutral, and this tractor had a decal in the cab telling the operator to put the machine in park and neutral before dismounting. *Id.* at 246, 249.

Taken together, these items are sufficient circumstantial evidence to entitle Deere to an instruction on assumption of the risk of a known defect. The testimony indicated that decedent was an experienced heavy equipment operator and very familiar with this tractor. Merely because he bypass started the tractor does not mean he was unaware of the risk. To the contrary, his willingness to bypass the starting circuitry may well be explained by the rush necessitated by a late harvest and personal time constraints. Placing someone else in the cab while bypass starting and placing the tractor in neutral are precautions taken to avoid runaway starts. The fact that decedent taught others to place the tractor in neutral is particularly significant because it is indicative of decedent's knowledge that the tractor could start in gear. Finally, the decedent's last words and actions support an inference of knowledge— once the engine started, decedent shoved his helper forward out of the path of the tractor and yelled "It's in gear." Rec. vol. IV at 34. Viewing the evidence in the light most favorable to Deere and considering all of the evidence, it seems to me the majority's statement that "there was no evidence whatsoever, direct or circumstantial, that decedent knew of the alleged defect in the tractor: that it could be started in gear," is just plain wrong. *See* Majority Opinion at 1440. Reasonable persons could differ on whether the decedent was aware of the alleged defect, yet continued using the product; consequently, the assumption of the risk of a known defect defense was properly submitted to the jury. *See Jordan v. General Motors Corp.,* 590 P.2d 193, 196 (Okla.1979) ("Where evidence is such that reasonable men might differ on the question of whether plaintiff's awareness of defect and continued use of the vehicle was proximate cause of the accident, this defense is a question of fact for the jury.").

The majority's reliance on *Smith v. FMC Corp.,* 754 F.2d 873 (10th Cir.1985), for the result achieved here is unpersuasive. In *Smith,* the decedents were killed when a piece of steel was dropped from a crane operating over their heads. Although the decedents were working on a job in the same general area where the crane was operating, they were working on a different job than the crane operator and there was an absence of evidence indicating that they were aware of any defect in the crane, let alone danger. *Smith v. FMC Corp.,* 754 F.2d at 877. In this case the relationship between the decedent and the tractor is not attenuated, and there is sufficient evidence from which a trier of fact could conclude that either decedent was aware of the danger or could not have been unaware of it. *See* Rec. vol. I at 118–19 (assumption of the risk instruction); *Bingham v. Hollingsworth Mfg. Co.,* 695 F.2d 445, 451 (10th Cir.1982) (instruction on assumption of the risk justified when there was "a risk of great magnitude which was obvious").[2]

2. The majority apparently reads *Bingham* as requiring that there be direct evidence of plaintiff's knowledge of a known defect before an assumption of the risk instruction may be given. Majority Opinion at 1441 n. 5. While it is true that a trial court should submit an assumption of the risk "defense to the jury where the direct evidence of plaintiff's knowledge is unclear," *Bingham v. Hollingsworth Mfg. Co.,* 695 F.2d 445, 449 (10th Cir.1982), that cannot mean that knowledge of a defect may only be proven by direct evidence. Indeed, when the injured party is unavailable to testify, circumstantial evidence may be the only type of evidence available.

The majority also holds that it was error to instruct the jury on the affirmative defense of use of the product for an abnormal purpose, a defense recognized in Oklahoma. *See Fields v. Volkswagen of America, Inc.*, 555 P.2d 48, 56–57 (Okla.1976). Essentially, the majority holds as a matter of law that bypassing the tractor's starting circuitry would constitute, at most, use of the tractor in a careless manner (contributory negligence), not misuse or abnormal use of the product. Majority Opinion at 1443. Their analysis focuses exclusively on the intended end use of the product, no matter how improper an injured party's attempt to use a product.[3]

At first blush, the majority's analysis would seem to find support in *Ford Motor Co. v. Matthews*, 291 So.2d 169 (Miss.1974), a case cited with approval by the Oklahoma Supreme Court in *Fields*. In *Matthews*, the decedent attempted to start his tractor with the key while standing on the ground. The neutral safety switch, specifically designed to prevent the tractor from starting while in gear, failed and the tractor ran over the decedent and dragged him beneath the disk. *Ford Motor Co. v. Matthews*, 291 So.2d at 171. The defective aspect of the tractor was the safety switch itself; the plaintiff contended that a plunger connected with the safety switch failed, thereby allowing the tractor to start in gear. *Id.* According to the manufacturer, the decedent's standing on the ground and starting the tractor while in gear constituted product misuse. The Mississippi Supreme Court rejected this defense because the "failure of the safety switch to prevent the tractor from cranking in gear was a cause of the accident." *Id.* at 174. The decedent's conduct was not "such misuse" as to relieve the manufacturer from strict liability. *Id.* The decedent, by inserting and turning the key in the ignition, did exactly what he would have done had he been seated on the tractor.

The facts of the case before us are different in one important respect. Here, the decedent did not use the key to start the tractor, he bypassed the starting circuitry entirely. Thus, we are not confronted with a situation where a neutral safety switch did not work as intended. Instead, the decedent used a completely different procedure to start the tractor, one which was not intended by the manufacturer. He was standing on the ground directly in the path of a giant tractor wheel using the shank of a screwdriver to short across the starter terminals. The introduction of a foreign instrumentality while deliberately bypassing the starting circuitry provided by the manufacturer at least creates a factual issue as to whether the aspect of the product at issue in this case, the starting system, was being used for an unintended purpose or in a way that could not be anticipated by the manufacturer. *See Fields v. Volkswagen of America, Inc.*, 555 P.2d at 56. The majority recognizes that there is a factual issue as to whether Deere could foresee decedent's manner of starting the tractor. Majority Opinion at 1443. But to hold, as a matter of law, that there can be *no* misuse of a tractor provided an injured party intends to use the tractor to plow fields, is simplistic and makes the manufacturer, who often cannot restrain the inventiveness of consumers, an insurer for virtually every accident that may occur. *See* n. 3, *supra*.

Likewise, the majority's reliance on *Spencer v. Nelson Sales Co.*, 620 P.2d 477, 482–83 (Okla.App.1980), is misplaced. The

Moreover, there are certain products or procedures where the potential for danger is "readily apparent" and "obvious." *Steele v. Daisy Mfg. Co.*, 743 P.2d 1107, 1109 (Okla.App.1987).

**3.** Thus, were a party injured by attempting to start an older power lawn mower by turning the mower on its side and spinning the blade, an instruction concerning product misuse could not be given under the majority's analysis if the party intended to use the mower to mow his lawn. In my view, such conduct transcends mere carelessness or negligence, which would not be a defense in a products liability action. Instead, like the instant case, the conduct is more accurately characterized as an abnormal use, one never intended by the manufacturer. Such conduct amounts to a gross deviation from the proper way to start a rotary lawnmower; it is a completely different procedure than what the manufacturer intended.

defective product in *Spencer* was a suit of quilted long insulated underwear worn under the plaintiff's cotton overalls. *Id.* at 479. While the plaintiff was welding, a spark went beyond the overalls, igniting the underwear and injuring the plaintiff. *Id.* The defendant contended that the plaintiff misused the underwear by failing to wear leather overalls which would protect him from sparks. *Id.* at 482. The court of appeals rejected this contention, reasoning that, at most, the failure to wear leather overalls would be contributory negligence and that there was no evidence that the plaintiff was using the underwear for any purpose other than for warmth. *Id.* In the case before us, there is evidence that the decedent was not using the starting system provided by the manufacturer, but rather interposed his own starting procedure, which included the introduction of an instrumentality not provided by the manufacturer. In other words, the decedent actively altered the way in which the starter was supposed to be activated. This is not a case where the only possible factual determination is that the injured party merely used the product or used it in a careless manner.[4]

I would affirm the trial court's judgment based on the jury's verdict. In my view, the evidence entitled Deere to instructions concerning assumption of the risk of a known defect and product misuse. By insisting on more than circumstantial evidence to support these instructions, the majority has not reviewed the evidence in the light most favorable to triable claims *and* defenses.

4. The majority relies on a district court decision in *Reed v. John Deere*, 569 F.Supp. 371, 377 (M.D.La.1983), to bolster its legal conclusion that the decedent's starting method could not constitute use in an abnormal manner. Majority Opinion at 1443–44. The difficulty of using this case to support such a conclusion is manifest. First, the case involves a tractor which, after being key started and idling for several minutes, slipped into reverse, killing the plaintiff's decedent. *Id.* at 373. The "bypass" issue in that case involved whether the neutral safety switch had been bypassed, rather than repaired. *Id.* at 375. It did not involve an operator shorting across the starter terminals to activate the starter motor. In any event, the "bypass" issue was of no consequence because the trial judge found that the injury would have occurred whether or not the neutral start switch was working. *Id.* at 376. Even though the case turns on unreviewed factual findings, it may lend support to the notion that failure to start a tractor from the seat, when checking repairs, is not an abnormal use despite manufacturer's warnings to the contrary. But it is an overstatement to say "But, as the court concluded in *Reed v. John Deere, supra,* the tractor was not used in an abnormal manner or in an unforeseeable way when the decedent bypass started the tractor as he did." Majority Opinion at 1443.