Catherine BINGHAM, Plaintiff-Appellant,

v.

HOLLINGSWORTH MANUFACTURING CO., INC., a Texas Corporation, Defendant-Appellee.

No. 81–1092.

United States Court of Appeals, Tenth Circuit.

Nov. 9, 1982.

Rehearing Denied Dec. 15, 1982.

Glen Mullins, Abel, Musser, Sokolosky & Clark, Oklahoma City, Okl. (Ed Abel and David Pearce, Abel, Musser, Sokolosky & Clark, Oklahoma City, Okl., with him on the brief), for plaintiff-appellant.

David L. Thomas, Crowe & Dunlevy, Oklahoma City, Okl. (Patrick M. Ryan and Candace M. Williams, Crowe & Dunlevy, Oklahoma City, Okl., with him on the brief), for defendant-appellee.

Before SETH, Chief Judge, DOYLE, Circuit Judge, and TEMPLAR *, Senior District Judge.

WILLIAM E. DOYLE, Circuit Judge.

This is a diversity case and personal injury, as well, which originated in the Western District of Oklahoma, wherein the defendant, the Hollingsworth Manufacturing Co., Inc., prevailed before the jury. Mrs. Bingham, the plaintiff, was injured when she lost control of her truck while pulling a loaded fertilizer spreader to her farm to be used there. This spreader was heavy equipment (four tons) which was being pulled by Mrs. Bingham in a pickup truck. Indeed, the spreader, which was loaded with fertilizer, was much heavier than the truck (one-half ton), and it turned over, taking the truck with it. She had a claim against the owner-lender of the spreader but that claim has been disposed of.

Inasmuch as this is a case of first impression in Oklahoma, we are required to scrutinize the plaintiff's theory of the case and the instructions which were given by the court in order to ascertain whether the trial court erred in instructing the jury particularly in the area of assumption of the risk with respect to a known defect.

* Honorable George Templar, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

The plaintiff-appellant had bought a load of dry chemical fertilizer from the Wheeler Bros. Grain Company on May 17, 1976. Included in the purchase of the fertilizer was the right to use one of the dry fertilizer spreaders which was owned by Wheeler Bros. This spreader served not only to spread the fertilizer on the land, but also it allowed the individual using it to haul the fertilizer to the farm.

Wheeler Bros. filled the hopper of a four-ton capacity spreader manufactured by Hollingsworth Manufacturing Co., Inc., and attached it to Bingham's half-ton pick-up truck. As she was driving down a long, steep hill on the highway which led to her farm, Bingham lost control of her truck when she applied the brakes in an attempt to slow down. The truck and trailer jack-knifed and the previously described accident followed.

Mrs. Bingham's case against Wheeler Bros. was settled. It is the case against Hollingsworth, the manufacturer, which is being considered.

The manufacturer could have contributed to the accident. The spreader was twice as heavy as Bingham's truck and had been attached to it slightly off center. The spreader lacked independent brakes. The spreader's right rear tire may have blown out or could have been slightly deflated just before the accident. The spreader had four tires on tandem axles. Bingham was a farmer and had some experience in driving a variety of farm equipment. She had, however, never towed a fertilizer spreader on the highway.

The evidence at trial was that Mrs. Bingham's speed ranged from 25 to 50 miles per hour. The speed limit on the highway was, of course, 55 miles per hour. Mrs. Bingham could have braked her truck too abruptly or may have done something else after cresting and starting down the hill which set in motion the forces which caused the loss of control of the truck.

Bingham's theory in the proceeding against Hollingsworth was products liability. Her contention was that the fact that the spreader had no brakes or any signs to warn drivers of the danger of towing a fully laden spreader over 25 miles per hour would cause the spreader to be unreasonably dangerous. Bingham argued that this defective design was the proximate cause of her injuries.

Hollingsworth defended this design, alleging that Wheeler Bros. was responsible for the accident by allowing an inexperienced driver to haul the spreader with too light a truck and without warning of the hazard. Hollingsworth also asserted the affirmative defense of assumption of the risk of a known defect, and that is the bone of contention in this appeal.

At the end of the trial the jury was instructed regarding causation, third-party liability, defective design and failure to warn of latent danger. The jury returned a verdict in favor of Hollingsworth. Bingham filed a motion for a new trial which was overruled. The judgment was thereupon entered and the present appeal followed.

The main contention on appeal revolves around the jury instructions.

*First,* Bingham contends that there was insufficient evidence to warrant submission of the issue of assumption of risk to the jury.

*Second,* Bingham maintains that if it was proper for the jury to consider the defense that the trial court's instructions regarding assumption of the risk misstate the requirements of that affirmative defense as it applies to a products liability claim.

*Third,* Bingham argues that the trial court should have instructed the jury that the trailer was in violation of Oklahoma law by not having brakes.

*Fourth,* Bingham relies on the court's failure to instruct the jury that, as the manufacturer, Hollingsworth would still be liable, even though other people's negligence contributed to the ultimate injury.

*Fifth,* Bingham argues that the court should have instructed the jury that contributory negligence does not constitute a defense to a products liability suit.

The trial court's instructions to the jury contained an explanation of the plaintiff's burden in a products liability action. This outlined the plaintiff's requirement to prove by a preponderance of the evidence that the defendant's fertilizer spreader was sold with a defect which made it unreasonably dangerous to the plaintiff. The defect would be unreasonably dangerous if the quantity of risk in its use exceeded the ordinary user's knowledge. *Kirkland v. General Motors Corporation*, 521 P.2d 1353, 1362 (Okl.1974); Restatement of Torts (Second), § 402A, comment g. One of the main issues presented to the jury was whether the spreader was inherently defective, thus making it unreasonably dangerous to Mrs. Bingham.

Hollingsworth's evidence defended the spreader's design and refuted the plaintiff's evidence that it should have had brakes and warning signs. If the spreader were defective, however, the jury heard evidence which conceivably could have supported the conclusion that it still was not dangerous beyond the abilities of a user with ordinary common knowledge. Indeed, Mrs. Bingham acknowledged on cross-examination that she knew that she had to be careful and drive slowly because she was towing a big load.

In *Kirkland, supra,* the Oklahoma Supreme Court ruled that it was not error under the facts before it to have given an assumption of risk instruction which would ordinarily be given in a negligence case. The court went on to say that subsequent products liability cases ought to be reviewed by the new *Kirkland* standards. On this subject the court stated approvingly:

> Judgment will not be disturbed because of allegedly erroneous instructions, unless it appears reasonably certain that the jury was misled thereby * * *.

> [The] salient test of reversible error in instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered, if alleged errors had not occurred. 521 P.2d at 1367, quoting *Missouri-Kansas-Texas RR. Co. v. Harper,* 468 P.2d 1014 (Okl.

1970); *see also,* 20 O.S.1971 § 3001.1; 12 O.S.1971 § 78, *Johnson v. Wade,* 642 P.2d 255, 259–61 (Okl.1982). "An erroneous instruction is not cause for reversal, unless it is shown that it probably misguided the jury; otherwise it is harmless."

## I.

*Was sufficient evidence submitted so as to require submission of the affirmative defense of voluntary assumption of the risk to the jury?*

The key to the answer is factual. It is how specific Bingham's knowledge of the spreader's defect and the resultant risks must be in order for the trial court to be justified in submitting Hollingsworth's defense to the jury.

Hollingsworth's position is that the spreader was not defective in the ordinary sense of the term; the fact that it was too heavy for her truck did not amount to a defect; the only "defect" was that which resulted from faulty driving. In other words, it was being driven over 25 miles per hour, and it is Hollingsworth's theory that that is what caused the problem. Thus, the defect would arise in view of the fact that the vehicle was being moved downhill at a relatively high speed, and in view of that fact it has to be concluded that the deficiency arose from the *use* of the spreader, not in its construction because or due to the lack of brakes.

The question is, therefore, whether Bingham was aware of the dangers of driving the truck pulling the very heavy spreader downhill at a high rate of speed. It is our conclusion that there was enough evidence in the record to justify submission of the issue to the jury.

Bingham argues that she had only a general knowledge of the dangers of pulling a heavy trailer-type load; that she did not know that the spreader had no brakes and there was no warning sign cautioning her to drive under 25 miles per hour.

The only direct evidence of her knowledge was presented in her cross-examination, when she admitted that she knew that

the load was great and she had to be careful. She said that she planned to drive between 25 and 30 miles per hour, even though she was not told to do so. When asked whether she knew that if she did not drive slowly that she might have a problem with that big load, she answered, "Yes, sir." She was also aware that she had to maintain the speed at 25 or 30 miles per hour; it was not necessary to be warned about that. She denies that she had any further knowledge.

The case of *Hogue v. A.B. Chance Co.,* 592 P.2d 973 (Okl.1979) supports Bingham's argument that general knowledge is insufficient to bar her recovery. In *Hogue* a lineman was severely injured while installing electrical transmission lines. The depositions showed that he admitted that if he had been wearing insulated gloves he would not have been injured. Instead, he assumed that defendant's boom and basket in which he was working were insulated but he was wrong. The result was a shock when he grasped the control handle with his bare hand. Because of that admission the trial court gave defendant a summary judgment as to plaintiff's products liability claims. The court found that plaintiff had voluntarily assumed a known risk. 592 P.2d at 974.

The Oklahoma Supreme Court reversed and remanded for a new trial. The deposition admission sounded in contributory negligence, the court ruled, and that "is not a relevant consideration in the manufacturers' products liability action unless there is a showing that plaintiff knew the boom was not insulated and that he would be exposed to possible electrocution through the handle if he did not wear the gloves." 592 P.2d at 975.

In *Good v. A.B. Chance Co.,* 39 Colo.App. 70, 565 P.2d 217 (1977), the defendant appealed the exclusion of evidence in support of its assumption of the risk defense. With respect to the Restatement of Torts (Second) requirements, the Oklahoma court in *Hogue* paraphrased the Colorado Court of Appeals:

absent evidence of the lineman's knowledge of the specific defect and the danger

it posed, defendants' evidence in support of that defense would support conjectural inferences only, thus evidence was properly excluded. 592 P.2d at 975.

The Oklahoma Supreme Court in *Hogue* used reasoning similar to that used in the Colorado opinion. The Oklahoma Supreme Court was not convinced that the *Hogue* facts justified a summary judgment that plaintiff had assumed the risk because *Kirkland* dictated that there must be a showing that plaintiff knew of a defect which was unreasonably dangerous in nature, yet proceeded to voluntarily use the product. Only in those circumstances would he be precluded from recovery because of this defense.

In *Barber v. General Electric Co.,* 648 F.2d 1272, 1277 (10th Cir. 1981), this court interpreted *Kirkland* and *Hogue* to mean that the assumption of the risk defense in a products liability suit requires a jury determination that plaintiff was aware of a known defect and had assumed a known risk.

If the reasoning in *Hogue* were applied to the case at bar, Bingham would not be barred from submission of the case to the jury unless the evidence showed that (1) she knew that the spreader did not have brakes; (2) she understood that, because the spreader weighed nearly twice as much as her truck, the fact that it did not have brakes meant that at excessive speeds it could push against her truck with enough force to cause her to lose control; the extreme danger growing out of the great weight of the spreader had to be apparent from pulling it; (3) she nevertheless chose to tow the spreader.

But *Hogue* was talking about the kind of specificity that is applicable to summary judgment. Trial courts in Oklahoma may not grant summary judgments on the basis that plaintiff assumed the risk without that plaintiff assumed the risk without proof of specific knowledge in light of *Hogue,* but that does not mean that they cannot submit that defense to the jury where the direct evidence of plaintiff's knowledge is unclear.

*Jordan v. General Motors Corp.,* 590 P.2d 193 (Okl.1979), is similar to our case. The Oklahoma Supreme Court ruled that the defense of the assumption of the risk of a known defect ought to be submitted to the jury where there is evidence suggesting that plaintiff voluntarily encountered a known risk. Plaintiff in *Jordan* had a one-car accident when he ran off the road after losing control of his automobile. The alleged defect was the absence of the steering stabilizer bar. He sued General Motors alleging that the absence of the bar rendered the car unstable. There was evidence that plaintiff knew that his car steered strangely and tended to veer prior to the day of his accident. The jury returned a verdict in plaintiff's favor, but on appeal General Motors apparently emphasized its assumption of the risk defense to the jury. Its contention apparently was that because plaintiff knew his car acted strangely, he had as a matter of law assumed the risk.

The Oklahoma Supreme Court's answer is quoted:

Assumption of the risk of a known defect is an affirmative defense in a manufacturers' products liability action. Where evidence is such that reasonable men might differ on the question of whether plaintiff's awareness of defect and continued use of the vehicle was proximate cause of the accident, this defense is a question of fact for the jury. There was evidence plaintiff knew the car was acting strangely, having a tendency to veer. However on a demurrer to the evidence or a motion for directed verdict, trial court must accept as true all evidence and reasonable inferences therefrom favorable to the party against whom the motion is directed, while disregarding conflicting evidence favorable to movant. Whether evidence as to knowledge by plaintiff is equivalent to knowledge of a known defect and thus an assumption of the risk of a known defect, is for jury to decide. 590 P.2d at 196. [footnotes omitted]

Courts elsewhere have ruled similarly on the issue of whether direct evidence of plaintiff's knowledge of the defect is essential to the defense being submitted to the jury.

Judge Thompson's instructions in our case were:

The defendant contends the plaintiff assumed the risk or [sic] injury from the fertilizer spreader which the plaintiff contends caused her injuries. If you find each of the following propositions, the plaintiff cannot recover:

1. That a defect existed in the fertilizer spreader.

2. That the defect was obvious, or that the plaintiff knew of it; and

3. That the plaintiff voluntarily exposed herself to the danger posed by such a defect and was injured thereby.

\*    \*    \*    \*    \*    \*

If from all the evidence you find that the defendant has proven its affirmative defense or [sic] voluntary assumption of the risk of a known defect then your verdict should be for the defendant and against the plaintiff.

The parties have some additional cases. *See,* for example, *Keener v. Dayton Elect. Mfg. Co.,* 445 S.W.2d 362 (Mo.1969), wherein plaintiff was injured when he lifted a pump out of the sump while standing ankle deep in water, with no rubber gloves or boots on, and with the pump still plugged into an electrical outlet. There was no ground wire or overload protector. Notwithstanding plaintiff's manner in using the pump, it was unreasonably dangerous because it was not grounded. Since plaintiff did not know the pump was defective, his negligent handling of the product would not bar his recovery under product liability claims.

In *Collins v. B.F. Goodrich Co.,* 558 F.2d 908 (8th Cir. 1977), the plaintiff did not recover. Collins, a certified mechanic, was injured when an airplane wheel exploded after he inflated it. Although he knew that over-inflating a tire could cause even a non-defective wheel to explode, he used a high pressure line to inflate the tire. This was despite printed warnings on every tire to use low pressure air only. Use of the high

pressure made it possible for even a sound wheel to explode, and so the Eighth Circuit found that the *Keener* case was distinguishable from *Collins.* Both plaintiffs were unaware of the defect, they alleged, and both used the products in a negligent manner. But Keener's injury could not have occurred had the pump been grounded, while Collins' injury could have occurred even if the wheel were non-defective. The Eighth Circuit upheld the trial court's instruction that Collins could not recover if he knew that use of the product was dangerous; that he voluntarily and unreasonably exposed himself to the very danger which he had created and this was the cause of his injury, as well. 558 F.2d at 912.

Applying this reasoning to the present case depends on how the term "defect" is considered. Bingham would not have been injured if she had driven slowly, if she had used a bigger truck, or perhaps if the spreader had had brakes, or if she had turned the transportation over to Wheeler Bros. Her situation seems more similar to Collins who would not have been injured if he had not over-inflated the tire, regardless of whether the wheel was defective or not, since either a defective or a sound wheel might have exploded with the high pressure.

*Poches v. J.J. Newberry Co.,* 549 F.2d 1166 (8th Cir.1977), bears some similarity to the case before us because this plaintiff was not a trained mechanic. She lost her eye when her lawnmower hurled a piece of wire into it. The Eighth Circuit upheld the jury's determination that she assumed the risk and was therefore barred from recovery.

In *McGrath v. Wallace Murray Corp.,* 496 F.2d 299 (10th Cir.1974), this court applied Utah law; the trial court refused to instruct on assumption of the risk since there was no evidence that plaintiff knew of a specific defect which caused a grinding disk to disintegrate. We said that the trial court should have instructed on misuse since foundry workers had removed the grinder's guard.

For still other authorities in the same area, see Annot., Products Liability: Contributory Negligence or Assumption of the Risk as Defense, 46 A.L.R.3d 240 (1972).

We conclude that the giving of the subject instruction was justified. The undertaking considering the terrain and the disproportionate weight of the pick-up in relation to the trailer created a risk of great magnitude which was obvious.

## II.

*Was it error for the trial court to fail to instruct the jury that defendant was required to prove plaintiff unreasonably chose to use a product she knew was dangerous?*

The trial court told the jury that Bingham could not recover if the jury found that "the plaintiff voluntarily exposed herself to the danger posed by such a defect and was injured thereby." That instruction is in line with passages in the *Kirkland* case, but it does not correspond with the language in *Kirkland* which directly defines the assumption of the risk defense, nor is it in accord with Restatement § 402A, comment n, which *Kirkland* purports to adopt:

[T]he form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger and commonly passes under the name of assumption of the risk, is a defense under this section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

Bingham maintains that the court erred in rejecting her proffered instruction. She maintains that the word "unreasonable" which appears in the Restatement definition should have been set forth as a requirement in the court's instruction in this case. The answer is that "unreasonable" or "unreasonably", although it does appear in the Restatement version, has not been put to use by the Oklahoma court. Although it was proper to allow the jury to

consider the assumption of a risk defense, it is arguable that it should have had the unreasonable factor in it. In view of the Oklahoma court definitions, which omit "unreasonableness" or "unreasonable," we do not think that it was necessary for the court to include it.

There is a lengthy law review article authored by Professor McNichols, of the Oklahoma University Law School, which says that there is no way to tell from Kirkland whether a defendant must prove that a plaintiff took only a voluntary or both a voluntary and unreasonable risk with a product he knew to be defective. He says that if Ms. Kirkland had been driving a car she knew to be defective because she had a good reason, she was "reasonable" in choosing to take a risk, that most courts and the Restatement of Torts would allow her to recover, but that the Kirkland court could arguably refuse to allow her to recover. He also discusses disparities in the court's definitions of the assumption of the risk defense in products liability cases, and states that he hopes a future court will resolve the ambiguity in favor of plaintiffs, the innocent risk takers, where their conduct is "reasonable under the circumstances." He concludes however that Oklahoma trial courts could properly instruct that the "plaintiff is barred if defendant proves that plaintiff voluntarily and knowingly encountered the fully appreciated dangers of a defective product * * *." See McNichols, Kirkland v. General Motors, Manufacturers' Products, Liability Doctrine—What's in a Name?, 27 Okla.L.Rev. 347, 388–93 (1979).

In Johnson v. Clark Equipment Co., 547 P.2d 132 (Or.1976), the Oregon court reversed the trial court for failure to use the unreasonable criterion. Unlike our situation, "unreasonable" was the part of the definition that Oregon held dear, only it is not part of the definition in Oklahoma cases.

The short answer to appellant's argument is that the Oklahoma court has not included "reasonable" as a requirement. It is not possible for this court to do it.

## III.

*Did the court's instructions allow the jury to find that Bingham assumed the risk because the spreader had an obvious defect?*

As to the knowledge of the defect, the jury instructions were to the effect that Mrs. Bingham could not recover if the jury found that the defect was obvious, or that the plaintiff knew of it. Bingham argues that this misstates the law, because it allowed the jury to impute to her knowledge of the defect if it felt that the lack of brakes was obvious. That is use of the patent danger rule, which Oklahoma has rejected. But juries are not required to accept the plaintiff's word that he was unaware of a dangerous defect—they can reject such testimony, where in light of all the evidence the actor could not have been unaware of the hazard. See William v. Brown Mfg. Co., 45 Ill.2d 418, 261 N.E.2d 305, 46 A.L.R. 226 (1970). It is true that the defense is supposed to be grounded on plaintiff's subjective awareness. How then, without giving an instruction like that in our case, does a court tell the jury to bar plaintiff's recovery if she actually knew of the hazard, and at the same time tell them they can find that the plaintiff knew if he must have known? Because knowledge can be imputed through circumstantial evidence.

While the court should have put more emphasis on the fact that plaintiff's subjective knowledge was what Hollingsworth had to prove, the fact that the trier of fact may instead decide the issue of plaintiff's knowledge on the basis of such circumstantial factors, experience and knowledge indicates that some test including how obvious the defect was is necessary in instruction on assumption of the risk.

## IV.

*Should the trial court have instructed the jury that an Oklahoma statute requires trailers to have brakes?*

Bingham contends that Title 47 of § 12–301(c) of the Oklahoma Motor Vehicle Code

requires trailers with gross weight of 3,000 pounds or more to be equipped with brakes when they are towed on highways. The statute provides as follows:

Every trailer, semi-trailer and pole trailer of a gross weight of three thousand pounds or more when operating upon a highway shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle and so designed as to be applied by the driver of the towing motor vehicle from its cab, and said brakes shall be so designed and connected that in case of an accidental breakaway of the towed vehicle the brakes shall be automatically applied. Okla.Stat.Tit. 47, § 12–301(c) (1961).

Another Oklahoma statute which was on the books when the spreader was manufactured recognized an "implement of husbandry" exception to the requirement for brakes. It is Bingham's argument that the exception does not apply to Hollingsworth's spreader, inasmuch as that spreader is not an implement of husbandry as defined by statute because it is neither a "farm wagon type tank" trailer for liquid fertilizer nor a vehicle adapted exclusively for agricultural purposes.

One fact that should be noticed is that at trial appellant also argued that the spreader should have had independent tongue-activated surge brakes so that people like Mrs. Bingham could tow a spreader that would have its own brakes. This statute would not tolerate independent surge brakes; it would require driver activated brakes. So, had the statute applied to Hollingsworth's spreader, then Mrs. Bingham would not have been able to tow the spreader with her half-ton pickup. She would have been required to use a towing vehicle specially equipped to link with and to activate the spreader's brakes.

In any event, Bingham's argument is that since a spreader is used both to haul fertilizer on the highways and to spread it on farmers' fields, it is not used exclusively in the conduct of agricultural operations; thus it cannot be excepted from the brake requirement as an implement of husbandry.

Since it is not an implement of husbandry, the jury should have been told that it violated Oklahoma safety requirements by failing to have brakes, so Bingham argues.

■ The implement of husbandry exception to vehicle codes was designed to allow farmers occasionally to tow non-complying farm equipment along the highways as they traveled short distances from one field to another or from their fields to storage areas. Fertilizer spreaders like Hollingsworth's which are sold ninety percent of the time to commercial fertilizer dealers are used to haul fertilizer on the highways on such a regular basis, however, that they might be subject to the same safety requirements as other trailers. For instance there is a 1970 amendment to the implement of husbandry exception which adds a requirement that trailers be "owned by a person engaged in the business of farming." Okla.Stat.Tit. 47, § 1–125 (1971). The trailer here considered predated the amendment's adoption and so would be excepted from the statute as an implement of husbandry.

Bingham cites *Wisconsin Fertilizer Assn. v. Karns*, 52 Wis.2d 309, 190 N.W.2d 513 (1972), a decision of the Wisconsin Supreme Court which upholds a ruling that dry fertilizer spreaders were implements of husbandry exempt from that state's safety and registration requirements. As in Oklahoma, Wisconsin defines implements of husbandry" as vehicles "used exclusively in the conduct of agricultural operations", and adds an additional qualification that such vehicles be "used principally off the highway." The main use was determined to be the spreading of fertilizer; transportation was ruled to be an incidental use of the vehicle. The conclusion was that hauling fertilizer on the highway was not an agricultural operation. The court, over the dissent of one of the Justices, held that dry fertilizer spreaders were implements of husbandry. In general it does make an important husbandry contribution but transporting it along the highway is not such a use.

*See, also, Sullivan v. Green Mfg. Co.,* 118 Ariz. 181, 575 P.2d 811, 814 (1978) (which

held that a cotton trailer is not an implement of husbandry because its principle purpose is traveling on the highway); *Western Packing Co., Inc. v. Visser,* 11 Wash.App. 149, 521 P.2d 939, 943 (1974) (mint distiller used primarily to chop mint on the farm and as a device in which to steam mint at the processing plant is an implement of husbandry because towing it on the highway is a secondary, inconsequential use).

■ The fact that this mechanism can trailer bulk fertilizer along the highway is to be regarded as an incidental use. It does not cause it to be subject to Oklahoma's trailer safety requirements. Therefore, the trial court was not required to give more than the instructions which it gave: that the fact that Oklahoma requires or fails to require braking systems on spreaders is not a conclusive matter whereby the absence of brakes is to be regarded as a defect in the spreader.

■ Bingham contends that the trial court should have instructed the jury that contributory negligence would not be a defense against Hollingsworth. Needless to say, the trial judge need not include or exclude every possible theory. To have injected contributory negligence would have been more confusing than it would be worth. The fact that the foreman of the jury asked about whether Mrs. Bingham had fastened her seat belt does not justify the giving of the instruction there requested.

■ Bingham also maintains that the court should have given a better instruction on the effect of the third party's intervening negligence; that it should have instructed the jury that Hollingsworth would still be liable due to its defectively designed spreader, even if Wheeler Bros.' later negligence meant Hollingsworth's negligence by itself might not have caused Bingham's injuries. Again we do not agree that there should have been an instruction that Hollingsworth would be shielded from liability only if the negligence of the third party was totally unforeseeable.

There was included in the charge a statement concerning causation; that the "cause of plaintiff's injuries need not be the only, last or nearest cause, but that if an outside source rather than the defect, was the cause of the damage, then causation was not proven." As to third parties, the court said that if a third party's actions were the sole cause of the accident the jury should find for defendant.

With respect to the Wheeler Bros., the court told the jury that the only question they were to consider was whether Hollingsworth was liable for plaintiff's injuries, and if so, the total of those damages. "The court will handle all legal matters concerning the status of Wheeler Bros. Grain Company."

Some cases that are cited are *City of Altus v. Wise,* 193 Okl. 288, 143 P.2d 128 (1943); *Baker v. Outboard Marine Corp.,* 595 F.2d 176, 183 (3d Cir.1979); and *Silkwood v. Kerr-McGee Corp.,* 485 F.Supp. 566, 593 (W.D.Okl.1979). These all dealt with intervening acts when they bar liability. We do not view the facts as requiring a construction based upon foreseeability of intervening force as being present here. Instructions of this sort introduce a new factor frequently which is of little, if any, value, and here it is our view that it would be valueless. It is to be noted that the court did tell the jury that Hollingsworth would be liable, provided the jury first found that the spreader was defective, unless the acts of a third party were the sole cause of Bingham's injuries. Bingham was not prejudiced by this instruction. It would have had to have found that Wheeler Bros. were solely responsible for the injury. It is arguable that Wheeler Bros.' negligence was the sole cause of the accident. There is no inherent defect in the equipment. The deficiency is in the way that it was used. But also a warning should have been given by Wheeler Bros. to exercise care in view of the heaviness of the spreader. Or better still, Wheeler Bros. should have delivered the spreader.

The plaintiff-appellant had a full opportunity to present its case to the jury. The trial was a fair one, and the Judge's interpretations of the applicable law were errorless.

A problem for plaintiff is that the mistakes were made at the scene and Mrs. Bingham has recovered from Wheeler Bros. Substantial fault on the part of Hollingsworth was not apparent.

Accordingly, the judgment of the district court should be affirmed, and it is so affirmed.