Dennis HOLT and Tonya Holt, husband and wife, Plaintiffs–Appellants,

v.

DEERE & COMPANY, Defendant–Appellee.

No. 93–6156.

United States Court of Appeals, Tenth Circuit.

May 27, 1994.

Micheal L. Darrah (Brently C. Olsson with him on the briefs), Huckaby, Fleming, Frai-

ley, Chaffin & Darrah, Oklahoma City, OK, for appellants.

Richard A. Sayles, Sayles & Lidji, P.C., Dallas, TX (Marvin S. Sloman and Jeffrey S. Levinger of Carrington, Coleman, Sloman & Blumenthal, L.L.P., McKinney, TX and Robert H. Alexander, Jr., of Robert H. Alexander, P.C., Oklahoma City, OK, with him on the brief), for appellee.

Before ANDERSON, HOLLOWAY, Circuit Judges, and OWEN,[*] District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

The plaintiff, Dennis Holt, appeals from a jury verdict in favor of the defendant, Deere & Co. ("Deere"), in a product liability suit arising from an accident in which he was crushed by a road grader when it started in gear. On a special verdict form the jury found that Holt had not proven the essential elements of his product liability claim, and that he voluntarily assumed the risk of a known defect. He contends the district court erred by instructing the jury on assumption of the risk, and by withholding his failure to warn claim from the jury. He also contends that the jury reached an inconsistent verdict, and he alleges other errors pertaining to certain jury instructions, evidentiary rulings, and the verdict form submitted to the jury.

We conclude that the jury was properly instructed on assumption of the risk under Oklahoma law and that it reached a legally permissible verdict. The jury's finding of assumption of risk makes harmless any error by the district court in granting judgment as a matter of law against his failure to warn claim. Finding no merit in Holt's remaining contentions, we affirm.

## BACKGROUND

On May 6, 1991, Holt suffered severe injuries when he was run over by a John Deere 570–A grader that he was attempting to repair. Holt was in his third year as a mechanic for Lawton (Oklahoma) Transit Mix and was used to working on heavy equipment such as large trucks, tractors, and road graders, including the grader involved in this accident. He had made repairs on this specific grader seven times before the accident.

Holt drove the grader into the maintenance shop several days prior to the accident. Because his repair work required him to start and stop the engine frequently, he would, for convenience, start the grader while standing on the ground rather than climbing into the operator's chair each time. Starting the grader this way placed him directly in front of the tandem rear wheels on one side of the grader. Holt kept both gear levers—the directional lever (forward, neutral, reverse) and the speed lever (neutral, one through eight)—in neutral as he made the repairs.

One morning as he resumed repairs, Holt reached up to start the grader without checking the gears. He assumed the grader was still in neutral as he had remembered leaving it. The grader started and remained in place momentarily as the hydraulic transmission system built up pressure. Seconds later, the engine made a strange noise, prompting Holt to reach into the cab to turn it off. The grader suddenly lurched forward. Its tandem rear wheels knocked Holt to the ground and ran over his midsection, causing severe and permanent injuries. A coworker who inspected the grader after the accident found it in gear; the directional lever was in "forward" and the speed lever was in fourth.

Like most heavy vehicles, the 570–A grader was equipped with a "neutral start switch," a safety feature in the starting circuitry designed to prevent the grader from starting in gear. The switch in the 570–A has two electrical contactors positioned so they do not touch. When the grader's speed lever is put in neutral, a spring inside the switch pushes a metal ball between the contactors, "connecting" them (i.e., putting the switch in the "closed position") and thus completing the starting circuit. This allows the grader to start when the key is turned and the starter button is pushed. If the speed

lever is in any gear other than neutral, the contactors in the switch are supposed to remain disconnected (i.e., the "open position"), thus preventing the grader from starting even if the key is turned and the starter button is pushed.

The grader in this case started in gear. That means either the neutral start switch failed (i.e., closed when it should not have, with the grader in gear, or remained stuck in the closed position after the speed lever was moved out of neutral), or the switch was somehow bypassed in the starting circuit. According to Holt's testimony, he did not knowingly or purposefully "bypass start" the grader, but simply followed the usual "key start" procedure of turning the key and pressing the starter button.[1]

Holt filed this diversity action against Deere under a strict liability theory, alleging that the grader was defective, unreasonably dangerous, and the cause of his injuries because its neutral start switch failed to prevent it from starting in gear. Am.Compl., Appellant's App.Vol. II, Tab 15. Holt further alleged that Deere knew the grader's neutral start mechanism was defective and failed to warn him of the danger that the grader could start in gear. *Id.* Holt's wife, Tonya, added a claim for damages for loss of consortium. *Id.*

Deere denied that the grader's neutral start switch was defective and denied that it had a duty to warn Holt of any danger or potential defect. Deere also asserted the affirmative defense that Holt voluntarily assumed the risk of a known defect. Deere's theory of why the grader started in gear was that the wires leading into the neutral start switch had been tampered with and were taped together, causing a short in the circuit

which effectively bypassed the neutral start switch altogether.

At trial, Deere and the Holts contested several important factual questions, including: what caused the grader to start in gear (relevant to the design or manufacturing defect claim); whether Holt knew the grader would "key start" in gear (relevant to assumption of risk); and whether Deere knew its vehicles' neutral start switches had a propensity to close defectively (relevant to the failure to warn claim).

At the close of Holt's evidence, the district court granted Deere's motion for judgment as a matter of law against Holt's failure to warn claim. *Id.* Vol. I at 734–36. Holt's remaining claim of design or manufacturing defect went to the jury, which found for Deere. Answering special interrogatories, the jury specifically found that (1) Holt had not "proven the essential elements of his products liability claim," and (2) Deere had "proven the elements of its defense of Voluntary Assumption of Risk." *Id.* Vol. II, Tab 2.

## DISCUSSION

In this diversity case we apply Oklahoma law because it is the forum state. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 79, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Taylor v. Phelan*, 9 F.3d 882, 885 (10th Cir.1993). We review the district court's interpretation of Oklahoma law de novo, *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220, 113 L.Ed.2d 190 (1991), and "as a matter of independent federal procedure we utilize the normal federal standards of appellate review to examine the district court's decision process." *Mid–America Pipeline Co. v. Lario Enters.*, 942 F.2d 1519, 1524 (10th Cir.1991).

---

1. It is well-known that heavy equipment operators sometimes "bypass start" their machines—bypassing the usual starting circuitry, including any safety switches—when the starting circuitry malfunctions, rather than stopping their task to repair the starting circuitry. *See McMurray v. Deere & Co.*, 858 F.2d 1436, 1438 & n. 1 (10th Cir.1988). One way this is done is by touching the terminals on the starter solenoid with a screwdriver or similar piece of metal. *Id.* at 1438. Another technique, with a more permanent (and latent) effect, is to physically modify the starting circuitry. *See Stump v. Indiana*

*Equip. Co.*, 601 N.E.2d 398, 400 (Ind.Ct.App. 1992) (noting that the grader's starter switch was wired directly to the starter solenoid, thus bypassing the neutral start switch). Any method of bypass starting a vehicle can be hazardous, as evidenced by the cases arising out of the practice. *See, e.g., Holland v. John Deere Co.*, 999 F.2d 547 (10th Cir.1993); *McMurray*, 858 F.2d at 1437–38; *Stump*, 601 N.E.2d at 400; *Tribble v. Gregory*, 288 So.2d 13, 15 (Miss.1974); *Ford Motor Co. v. Eads*, 224 Tenn. 473, 457 S.W.2d 28, 31–32 (1970).

## I. Submitting Assumption of Risk to the Jury

■ Holt contends that the evidence presented at trial was insufficient to warrant instructing the jury on assumption of the risk. He timely objected to the instruction. *See* Appellant's App.Vol. I at 1044. State law governs the substance of a jury instruction in a diversity case, and federal procedure governs the grant or denial thereof. *Gilbert v. Cosco Inc.*, 989 F.2d 399, 405 (10th Cir.1993); *Farrell v. Klein Tools, Inc.*, 866 F.2d 1294, 1296 (10th Cir.1989).

■ Under Oklahoma law, a plaintiff in a strict product liability suit against a manufacturer must prove that (1) a defective product caused the plaintiff's injury; (2) the defect existed in the product at the time it left the manufacturer's control; and (3) the defect made the product unreasonably dangerous. *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363, 1366 (Okla.1974); *see also McMurray v. Deere & Co.*, 858 F.2d 1436, 1439 (10th Cir.1988); Restatement (Second) of Torts § 402A (1965). The alleged defect may be the result of a problem in the product's design or manufacture, or it may be the result of inadequate warnings regarding use of the product. *See Smith v. United States Gypsum Co.*, 612 P.2d 251, 253–54 (Okla. 1980) (recognizing failure to provide adequate warnings as a product defect); *see also Mayberry v. Akron Rubber Mach. Corp.*, 483 F.Supp. 407, 412 (N.D.Okla.1979) (applying Oklahoma law); Restatement (Second) of Torts § 402A cmt. h.

■ A manufacturer may allege as an affirmative defense the plaintiff's "voluntary assumption of or exposure to the risk of a known defect." *Thomas v. Holliday ex rel. Holliday*, 764 P.2d 165, 167 n. 5 (Okla.1988) (declaring this the "proper verbalization" of the defense); *Kirkland*, 521 P.2d at 1366 (citing Restatement (Second) of Torts § 402A cmt. n). "Under this [defense] there must be a showing the plaintiff *knew of a defect* unreasonably dangerous in nature, yet voluntarily used the product." *Hogue v. A.B. Chance Co.*, 592 P.2d 973, 975 (Okla.1978). We have recognized that in order to establish this defense under Oklahoma law, the manufacturer must prove the plaintiff had "[s]ub-jective awareness of the defect and consequent risk of injury." *McMurray*, 858 F.2d at 1440 (citations omitted).

Admittedly, "defect" can mean different things depending on its context. Holt apparently interprets "defect" in the preceding statements of law to mean the precise *cause* (failure of the neutral start switch) of the product's "defective condition" (key starting in gear). Hence, he argues that in order to prove its assumption of risk defense, Deere must show that he subjectively knew that the neutral start switch had failed or was prone to failure. Appellant's Br. at 34–35. Deere contends that the knowledge-of-defect requirement is less specific, that it only must prove Holt knew of the grader's "defective condition"—that it could key start in gear—and that he appreciated the risk of injury this condition presented to him when he used the product the way he did here (starting it while standing on the ground). Appellee's Br. at 24.

### A. How Specifically Must a Plaintiff Know the "Defect"?

■ Oklahoma courts have not directly decided how specifically a plaintiff must understand a defect in order to assume the risk and forfeit recovery for manufacturer's product liability. An examination of the cases applying this defense, however, shows that Deere's position more accurately reflects Oklahoma law.

In *Jordan v. General Motors Corp.*, 590 P.2d 193 (Okla.1979), the plaintiff, Jordan, sued the manufacturer of his automobile after it veered off the road while he was driving. Jordan alleged that "a link which attached the end of the stabilizer bar to the A-arm was missing, causing the right front wheel to be unstable." *Id.* at 195. This parallels Holt's allegation that the neutral start switch on the grader failed in the closed position, causing the grader to start in gear.

Appealing a jury verdict for Jordan, the defendant argued that the trial court should have directed a verdict in its favor because Jordan voluntarily assumed the risk of a known defect. *Id.* at 196. In making this claim, the defendant relied on evidence that

"plaintiff knew the car was acting strangely, having a tendency to veer." *Id.* The Oklahoma Supreme Court explained that the defendant's motion for a directed verdict on assumption of risk grounds was correctly denied because in ruling upon such a motion, the trial court had to view all the evidence in the light most favorable to the plaintiff, "disregarding conflicting evidence favorable to [the defendant]." *Id.* The court said that the issue of assumption of risk was "for [the] jury to decide," and the jury found for the plaintiff. *Id.*

The Oklahoma Supreme Court's reasoning implies that the plaintiff's "general" knowledge of the car's "defective condition" (acting strangely, having a tendency to veer) was sufficient to create a jury question on assumption of risk. Indeed, requiring more *specific* knowledge would mean that a typical car owner, who knows that his car might veer out of control at any moment, but voluntarily takes the car out on the highway anyway and promptly crashes, "voluntarily assumed the risk of a known defect" only if he knew that the *reason* his car was veering wildly was because "a link which attached the end of the stabilizer bar to the A-arm was missing." We do not believe the Oklahoma Supreme Court intended "defect" to require such specific knowledge when it verbalized the assumption of risk defense.[2]

This conclusion is also supported by the Oklahoma Supreme Court's approval of a jury instruction on assumption of the risk in *Clark v. Continental Tank Co.*, 744 P.2d 949 (Okla.1987). The relevant instruction in *Clark* said: "The defendant has the burden of proving ... [t]hat the plaintiff was *aware of the danger involved* and voluntarily assumed such risk." *Id.* at 954 n. 12 (emphasis added). The court upheld this instruction and others as "fairly present[ing] the law applicable." *Id.* at 955; *see also* Restatement (Second) of Torts § 402A cmt. n (describing assumption of risk defense as "vol-

untarily and unreasonably proceeding to a known *danger*") (emphasis added).

These authorities demonstrate that a plaintiff can "assume the risk of a known defect" without specific, technical knowledge of the *cause* of the product's dangerous, defective condition. Of course, the defendant still must prove that the plaintiff was subjectively aware of and appreciated the specific dangers in using the specific product in the specific manner he was using it when the accident occurred. For example, we have previously held that under Oklahoma law a plaintiff's "general knowledge of the dangers of pulling a heavy trailer-type load" would not establish assumption of the risk. *Bingham v. Hollingsworth Mfg.*, 695 F.2d 445, 448 (10th Cir.1982). Instead, the defendant had to prove that the plaintiff "was aware of the dangers of driving the truck pulling the very heavy spreader downhill at a high rate of speed." *Id.* at 449; *see also McMurray*, 858 F.2d at 1440 (considering whether the decedent knew that the particular tractor could be bypass started while in gear).

Applying these principles to this case, Holt assumed the risk of a known defect if he knew, based on prior experience with the grader, word of mouth, or otherwise, that this particular grader could start in gear through the normal key starting procedure, and whether he appreciated the resulting risk of harm to someone starting the grader while standing on the ground. Holt was undoubtedly careless in starting the grader before checking the position of the gears. *Mere* carelessness, particularly if the result of ignorance or a false sense of security about the effectiveness of the grader's neutral start switch, would not bar Holt's recovery under the assumption of risk doctrine. *See Fields v. Volkswagen of Am., Inc.*, 555 P.2d 48, 56–57 (Okla.1976) (holding that contributory negligence, defined generally as use "in a careless manner," is not a defense

---

2. Our conclusion is also consistent with *Hogue,* in which the Oklahoma Supreme Court again found factual issues regarding the plaintiff's knowledge of the "defect," thus precluding summary judgment on assumption of risk grounds. 592 P.2d at 974–75. In *Hogue,* the plaintiff was a utility worker who was electrically shocked when he touched an uninsulated portion of the

aerial basket at the same time the uninsulated boom rubbed against a live wire. The Oklahoma Supreme Court said that the relevant question under assumption of risk was whether the plaintiff "knew the boom was not insulated and that he would be exposed to possible electrocution through the handle if he did not wear [insulated] gloves." *Id.* at 975.

to strict product liability). If he knew that this grader started in gear, however, and was still careless in not checking the gears, believing they were still in neutral as he had remembered leaving them, then under Oklahoma law the jury could find that he voluntarily assumed the risk of a known defect.

### B. Sufficiency of the Evidence Supporting the Instruction.

■ The assumption of risk instruction given to the jury in this case properly focused on whether Holt knew the grader could start in gear.[3] We therefore consider whether Deere presented sufficient evidence to justify submitting the instruction to the jury.

Under federal law, a jury instruction must be supported by sufficient competent evidence, direct or circumstantial, to permit a jury finding based on the instruction. *Farrell*, 866 F.2d at 1296; *Smith v. FMC Corp.*, 754 F.2d 873, 876 (10th Cir.1985); *Brownlow v. Aman*, 740 F.2d 1476, 1490 (10th Cir.1984); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2524 (1971). A "mere scintilla" of evidence will not support an instruction. *Farrell*, 866 F.2d at 1296. We have held that under Oklahoma assumption of the risk doctrine, the plaintiff's "knowledge [of the danger] can be imputed through circumstantial evidence." *Bingham*, 695 F.2d at 452.

In this case, the evidence is by no means overwhelming that Holt knew before the accident that this grader would start in gear. He testified that he had no such knowledge, that he knew the grader had a neutral start switch, and that he always started it in neutral because he thought that was the only way it would start, not because he thought it would start and move if he tried starting it in gear. Appellant's App.Vol. I at 38–39, 118. Byrd, another mechanic, also testified that he did not know this grader started in gear. *Id.* at 175. The grader's main operators, Albert Thompson and Lonnie Dye, both knew that this grader started in gear and testified that it had always done so for as long as they remembered. *Id.* at 159–60, 211. According to their testimony, neither Thompson nor Dye told anyone that the grader started in gear because they assumed it was supposed to be that way. *Id.* at 160, 211. Thus, it is certainly reasonable to believe that Holt was unaware this grader would start in gear.

On the other hand, Holt was an experienced mechanic who had been with this company for over two years, had worked on this grader seven times before, had adjusted a neutral start switch on a car before, and knew enough about starting circuits to know that if the neutral start switch was bypassed, the grader would start in gear and move. Appellee's App. at 27, 42, 118–19. Two people with whom he worked knew this grader always started in gear. And despite his testimony that he believed the grader would not start in gear because of the neutral start switch, in a statement explaining the accident a month afterwards Holt did not mention the neutral start switch or suggest that it must have failed. *Id.* at 141–42.

---

3. Instruction No. 23 read as follows:
   *Voluntary Assumption of Risk*
      Deere and Company also claims that it is not liable under Dennis Holt's products liability theory because Dennis Holt voluntarily assumed a known risk of starting the grader on the ground while it was in gear. On this issue, Deere and Company has the burden of proving by a preponderance of the evidence:
      1. That a risk of injury existed, that was inconsistent with the safety of the operation being performed.
      2. *That Mr. Holt actually knew the risk of injury existed and fully appreciated its nature and extent.*
      3. That Mr. Holt voluntarily exposed himself to the very risk that directly caused his injuries.

   In determining whether Mr. Holt realized the risk of injury, you may take into consideration all the evidence on both sides of the question whether he actually knew of the risk. *Mr. Holt has testified that he did not know that the grader would start in gear. Evidence to the contrary is circumstantial evidence.*
   Mere knowledge of the danger without full appreciation of the risk of injury involved is not sufficient as a basis for this defense.
      You are further instructed that, if you find by a preponderance of the evidence that Mr. Holt voluntarily assumed a known risk, then Mr. Holt is not entitled to recover for products liability.
   Appellant's App.Vol. II Tab 3 (emphasis added).

Most significantly, however, Holt's supervisor testified that in explaining the accident from his hospital bed, Holt said either "I knew better than that," or "I don't know why I did it." *Id.* at 234–35. A reasonable juror could infer from either of these statements that Holt knew the grader could start in gear and injure him. The statements make little sense otherwise. Whether construed as "I knew better than [to start the grader while standing on the ground]" or "I don't know why I [started the grader without checking the position of the gears first]," his statement admits that he did not act in accordance with his knowledge.

We hold that this evidence was sufficient to create a jury question as to whether Holt voluntarily assumed the risk of a known defect. As sole judges of the witnesses' credibility, the jurors were entitled to accept or reject the testimony of any witness in whole or in part. *See Mosley v. Truckstops Corp. of Am.,* —— P.2d ——, No. 77,916, 1993 WL 191378, at *5 (Okla. June 2, 1993); Jury Instr'n No. 6, Appellant's App.Vol. II, Tab 3. Rejecting Holt's trial testimony, one could reasonably infer from his admissions to his supervisor and the circumstantial evidence that Holt knew the grader started in gear prior to the accident. The court therefore properly submitted the issue to the jury even though other reasonable inferences could be drawn from the evidence.

Holt contends that *McMurray* requires us to find this evidence insufficient. We disagree. True, *McMurray* involved the same defendant, the same state's law, a similar (but not identical) product and accident, and it addressed the same general question, whether the evidence presented at trial supported a jury instruction on assumption of risk. *See McMurray,* 858 F.2d at 1437–41 (holding that the evidence did not warrant the instruction and reversing on that ground

and others). As we stated in *McMurray,* however, "[t]he key to the question is factual," *id.* at 1440 (quoting *Bingham,* 695 F.2d at 448), and those facts were different than these.[4] We hold that the district court did not err in submitting to the jury the instruction on voluntary assumption of the risk.

## II. Failure to Warn

■ Holt contends that the district court erred in ordering judgment as a matter of law against his failure to warn claim. *See* Fed.R.Civ.P. 50(a)(1). Even assuming that he is right, we hold that the error would be harmless in light of the jury's finding that Holt voluntarily assumed the risk of a known defect. Fed.R.Civ.P. 61. Voluntary assumption of risk is a complete defense to strict product liability under Oklahoma law. *Kirkland,* 521 P.2d at 1366–67. Thus, the jury's finding of assumption of risk, which we have held to be permissible, precludes any possibility that Holt would have recovered under his failure to warn theory.

## III. The Jury's Verdict

Holt also claims that the jury was confused and reached an inconsistent verdict in finding both that he had failed to prove the essential elements of his product liability claim and that he voluntarily assumed the risk. He argues that as a prerequisite to finding voluntary assumption of risk "the jury would [first] have to find that the road grader was defective." Appellant's Br. at 36. This is true, or false, depending on what he means by "defective." Regardless, the jury's verdict is not inconsistent.

Holt's argument assumes that the jury did not find the grader "defective." We do not actually know what the jury found, except that Holt failed to prove at least one of the essential elements of his product liability

---

4. In *McMurray,* the decedent was run over by his tractor when he bypass started it in gear, using the screwdriver to the solenoid method. *McMurray,* 858 F.2d at 1438; *see also supra* note 1. We said that in order to justify submitting assumption of the risk to the jury there had to be sufficient evidence that the decedent knew the tractor could bypass start while in gear. *Id.* at 1440. The evidence, which we held insufficient, was that the decedent was the owner and princi-pal operator of the tractor at issue; when he had previously bypass started it he had placed an operator in the cab or had checked the gears beforehand; he had instructed his employees to leave all equipment in neutral when they were through using it; someone (unidentified) testified that virtually all machines can be bypass started in gear; and the decedent exclaimed "It's in gear" just before the tractor ran over him. *Id.* at 1441.

claim. Thus, the jury may have found that the grader's neutral start switch was defectively designed, but that this did not cause the accident, or that this did not make the grader unreasonably dangerous in light of its other safety features. Since the jury was not asked and therefore did not answer more specific questions, we cannot review the verdict for the specific contradiction Holt alleges.

■ Furthermore, we question Holt's implication that the jury must find a design or manufacturing defect in order to find "voluntary assumption of the risk of a known defect." [5] Holt reads too much into the word "defect" in the verbalization of this defense. *See supra* Part I.A. While it is *unnecessary* for the jury to find assumption of the risk after it has determined that a manufacturer is not liable for product liability, it is not inconsistent for the jury to do so.

IV.  Remaining Issues

Holt makes several other contentions regarding the verdict form, certain jury instructions that were given or were not given, and "state of the art" evidence admitted at trial. Having examined the briefs and the record, including the jury instructions and verdict form, we find no merit in Holt's remaining contentions.

### CONCLUSION

For the reasons expressed above, the jury's verdict in favor of the defendant is AFFIRMED.

HOLLOWAY, Circuit Judge, concurring and dissenting:

While I concur in the result reached by the majority opinion, I respectfully dissent from the opinion's analysis and reasoning with respect to the affirmative defense of assumption of the risk. This disagreement causes me to write separately. My reasons follow:

### I

The majority opinion reasons that even assuming that Holt is right in his assignment of trial error in the rejection, as a matter of law, of his failure to warn claim, "the error would be harmless in light of the jury's finding that Holt voluntarily assumed the risk of a known defect. Fed.R.Civ.P. 61. Voluntary assumption of risk is a complete defense to strict product liability under Oklahoma law. *Kirkland [v. General Motors Corporation*, 521 P.2d 1353, 1366–67 (Okla.1974) ]." Majority Opinion at 1295. With this statement and others, the majority opinion approves the trial judge's submission of the assumption of the risk defense, and upholds the jury's finding that Deere had proven that defense of assumption of the risk here. The majority opinion "hold[s] that the district court did not err in submitting to the jury the instruction on voluntary assumption of the risk." Majority Opinion at 1295.

I respectfully disagree with the majority opinion's holding that the evidence on the affirmative defense was sufficient to support the finding necessary to such a defense of "voluntary assumption of the risk of a *known defect*" by the injured party's actions. *McMurray v. Deere & Co., Inc.*, 858 F.2d 1436, 1439 (10th Cir.1988) (emphasis added). I also disagree because treating the assumption of the risk defense as a proper basis for a holding here, *see* maj. op. at 1295, is unnecessary dictum. The jury's finding in Part I of its verdict that Holt did not prove the essential elements of his products liability claim, App. II at Tab. 2, is an ample basis for deciding the case and affirming the judgment

---

5.  Holt goes even further and claims that "before the assumption of the risk defense can be asserted, the defendant must first stipulate or concede that the product at issue was defective." Appellant's Br. at 33. The authorities he cites do not support this argument, however, and in fact they support the opposite conclusion, that a manufacturer is free to assert the alternative defenses that its product is not defective, *and*, assuming it is, that the plaintiff knew of the product's dangerous condition and voluntarily assumed the risk. *See*

*Smith*, 754 F.2d at 877 (applying Oklahoma law); *Jordan*, 590 P.2d at 195–96. In each of these cases, the problem with the defendant's assertion of assumption of the risk was basically the same: the evidence of the plaintiff's awareness of the risk was insufficient to support the result sought by the defendant. *See Smith*, 754 F.2d at 877; *Jordan*, 590 P.2d at 196. Neither case suggests that a defendant cannot assert the alternative defenses of no defect and assumption of the risk.

below. Thus, to me, the majority opinion's treatment of *McMurray*, its interpretation of the assumption of the risk cases from Oklahoma, and the discussion of the evidence on the defense here, are all unnecessary dictum.

## II

The majority opinion itself concedes the weakness of the evidence on the assumption of the risk defense. It says that "the evidence is by no means overwhelming that Holt knew before the accident that this grader would start in gear." Majority Opinion at 1294. As the opinion notes, Holt's testimony was clear on his lack of knowledge of malfunctioning which caused the grader to start in gear. Holt testified:

> I was unaware that that switch—did not hear it or I never saw that that switch did not operate.

App. I at 38. Holt was asked about having said he had worked on the grader five, six or seven times; and he was asked why he would not be aware the neutral start switch was malfunctioning. He replied:

> Because I always started the equipment in neutral—neutral that's the only position I knew it would start in.

*Id.* at 38.

The majority opinion relies on the evidence that two *other* people, who were the main operators of the grader, knew that the grader started in gear, Thompson and Dye. Nevertheless, the opinion notes that they testified they never told anyone that the grader started in gear. Majority Opinion at 1294. The evidence relied on by the majority opinion as most significant was that of Mrs. Mattie Boyles, the president and general manager of Lawton Transit Mix. Mrs. Boyles testified that she remembered Holt saying: "I don't know why I did it." I App.

at 235.[1] From statements it cites, the majority opinion concludes that a reasonable juror could infer that Holt knew the grader could start in gear and injure him. *Id.* at 1294-95. I disagree.

From the admittedly weak evidence on the point, I feel that the record would support no more than an inference that Holt did not know why he stood on the ground when he started the grader—at most indicating contributory negligence. This record, however, supports only speculation that Holt voluntarily assumed the risk of a "known defect." "[A] scintilla of evidence is insufficient to present a question for the jury, and the jury's finding must be supported by something more than 'some evidence.'" *Hunnicutt v. Wright*, 986 F.2d 119, 122 (5th Cir. 1993). We must remember we are dealing with an affirmative defense—"voluntary assumption of the risk of a *known defect*," *McMurray*, 858 F.2d at 1439 (emphasis added), and "Deere had the burden of proving *such knowledge* in raising this affirmative defense." *Id.* at 1440 (emphasis added).

The majority opinion reads *Jordan v. General Motors Corp.*, 590 P.2d 193 (Okla.1979), as an opinion that "implies that the plaintiff's 'general' knowledge of [a car's] 'defective condition' (acting strangely, having a tendency to veer) was sufficient to create a jury question on assumption of risk." *Id.* at 196. That case is clearly distinguishable from Holt's case. It is apparent that the record there showed actual observation of the malfunctioning of the car before the injury and the plaintiff continued to use the car nonetheless—not our case.

The argument for us to water down the Oklahoma requirement for proving "voluntary assumption of the risk of a known defect," *McMurray*, 858 F.2d at 1439, has been rejected by this court in *McMurray*. We

1. There were various versions repeated of statements Holt was said to have made in the hospital. These were repeated to Mrs. Boyles as she was questioned about her deposition testimony. She was asked if she didn't recall that Holt said to Mrs. Boyles, "I knew better than that"; she replied at trial: *"No, I don't remember that."* I App. at 234.

After questioning about Holt's statements, related in her deposition, Mrs. Boyles concluded in her trial testimony that: "I remember the statement 'I don't know why I did it.'" I App. at 235. Then she added:
> Mr. Holt was in an awful lot of pain, there was a lot of emotion at the time on my part seeing him suffering like he was.

*Id.* at 235.

there followed the clear teaching of the Oklahoma Supreme Court on Oklahoma law:

> "In order to avoid abuse of this legitimate defense [assumption of the risk], or confusion of same with its common law counterpart of the same name, it should be narrowly defined as *voluntary assumption of the risk of a known defect.*" 521 P.2d at 1366 (emphasis in original).... Under *Kirkland,* "there must be a showing that plaintiff *knew of a defect* unreasonably dangerous in nature, yet voluntarily used the product. Only then is he precluded from recovery under this defense." *Hogue v. A.B. Chance Co.,* 592 P.2d 973, 975 (Okla.1978) (emphasis in original).

*McMurray,* 858 F.2d at 1440 (quoting *Kirkland* and *Hogue* ).

In light of our rejection in *McMurray* of the suggestion to water down the burden to establish assumption of the risk, and the mere speculation about Holt's knowledge and actions here, I cannot agree that the burden of Deere to raise and establish the affirmative defense was met. "Any inferences that could be drawn constitute nothing more than pure speculation." *McMurray,* 458 F.2d at 1441. Moreover, that speculation would only suggest that Holt was careless in standing on the ground when he tried to start the grader—mere contributory negligence—not a defense to this Oklahoma products liability claim. *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 56 (Okla.1976).

For these reasons I cannot join the majority opinion. However, in light of the verdict finding that Holt had not proven the essential elements of his products liability claim, I concur in the affirmance of the judgment by the opinion.